By the statute against betting and gaming (1 R.S., 662, § 8), "all wagers, bets or stakes upon any gaming," c., are declared to be "unlawful," and all contracts for or on account of any money or property or thing in action so wagered, c., are "void." Section 14, of the same statute, provides that "every person who shall, by playing at any game, or betting on the sides or hands of those who play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same, or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost, paid or delivered, from the winner thereof." On the part of the defendant it is claimed that the loser at play has, by this statute, a merely personal privilege to sue and recover back his losses, but has no interest in the money or thing sued for which is capable of assignment so as to give the right of action to any one else.
If the statute had not given an action to recover money lost at play, it is quite certain that on the general principles of law a suit for such a purpose could not be maintained. The winner's exemption from suit and recovery would not result, however, from any title in himself to the money or thing won and received by him. On the contrary, the whole transaction being unlawful, he is bound in conscience to make restoration, and would be bound in law to do so, but for a peculiar maxim having the force of law, and according to which *Page 28 
the courts withhold their remedial processes from each of the offending parties. "In pari delicto potior est conditiodefendentis," is the rule in such cases; but this is a rule which acknowledges no just or legal title in the defendant. It assumes, on the other hand, that the money or thing in his possession has been acquired in violation of the law, and it then denies a remedy to the other party because he has been an equal sharer in the same offence. Thus the parties are left where the law finds them, and the defendant prevails, not upon his own merits or title, but because the plaintiff is deemed unworthy to be heard in the particular case. (Nellis v. Clark, 20Wend., 24, and cases cited; S.C. in Court of Errors, 4Hill, 424.)
This maxim of the common law which would leave the loser at play without a remedy, is abrogated in reference to gaming transactions, by the 14th section of the statute above quoted. That statute declares that the "person" who has lost the money may recover it back if he sues within a specified time. In a literal and exact sense, the statute gives the action; because without it the suit could not be maintained. Yet the clause does not so much create the right as it removes the difficulty which obstructed the remedy. The right in such a case rests upon the illegality and the voidness of the transaction; upon the absence of any just or legal title in the defendant to the money or thing in controversy. The unworthiness of the plaintiff to approach the altar of justice, was the only thing which stood in the way of the remedy. That difficulty being removed by the Legislature, I see no reason why the right to demand and recover money, staked and lost in gaming, is not as much a part of a man's estate as any other right in action which he can possess. And if this be so, why is not such a demand, like any other, capable of being transferred by act of the party or of the law?
But the statute, it is said, gives the action to "the person," and not to his assigns or representatives. Upon the precise terms of the statute, this is so; yet it is difficult to suggest any reason why the right to be asserted in such an action would *Page 29 
not devolve upon the administrator, and thus become a fund for the payment of debts or for distribution amongst the next of kin; or why an assignee in bankruptcy or insolvency would not succeed to the claim and be able to enforce it for the benefit of creditors. The assignability of things in action is now the rule; non-assignability, the exception. And this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage. The People v. Tioga Common Pleas,
19 Wend., 73; McKee v. Judd, 2 Kern., 622.) The right to claim and sue for money or property lost in gaming, is clearly not within the principles on which the exception rests. To take money from a person by gaming is, in a just sense, a wrong done to his estate. It subtracts from the means of paying his creditors, and in case the person dies, it diminishes the fund which ought to go in a course of distribution to the widow and next of kin. Such a cause of action, according to all the analogies of the law, is capable of transmission and assignment.
It is urged that the loser has a privilege to elect, within the three months, to bring his action, and that if he does not so elect, the right to sue vests in the overseers of the poor. This is true, but I do not see how it materially affects the present question. Every person having a cause of action is privileged in the same sense to bring his suit, and if he fails to do so, the lapse of time and the statutes of limitation will bar his right altogether. In this particular class of cases the limitation is a short one, but that is not a circumstance which changes the nature or affects the assignability of the demand. The substantive right is to recover back money, lost in gaming, to which the winner has acquired no title. This does not become a mere personal privilege to sue, in consequence of the shortness of the limitation. If the right is not asserted within the time, it is gone. The overseers may then sue according to the 15th section of the statute; but their action is not for the same cause. They may "sue for and recover the sum or value so lost and paid, together with treble the said sum or value." *Page 30 
This action is not, like that of the loser, based upon the duty of restoring the money won, but is for a penalty intended to repress the vice of gaming. The statute first provides for restitution between the parties, if claimed within a short period of time; if not so claimed, then the penalty attaches in favor of the overseers. In this legislation I can see nothing of mere privilege as distinguished from the right of property and its ordinary incidents.
The principles involved in this question have been several times considered in the courts of England, and the question itself there determined. The statute of 9 Anne (ch. 14), gave to the person losing at play an action of debt, at any time within three months, against the winner; and in the case ofTurner v. Warren (2 Strange, 1079), the question was whether, in an action founded on that statute, the defendant could be held to special bail, the defendant's counsel comparing it to penal actions where no bail was ever required. But the court held that there ought to be special bail in the case, because "the defendant was a debtor to the plaintiff." The clause of the statute was considered as remedial and not penal. In Bones v. Booth (2 Wm. Black., 1226), the plaintiff sued to recover back seventeen guineas lost at play. The jury having found a verdict for the defendant, a motion for a new trial was made, for the reason that the verdict was against the evidence. This was resisted on the ground that there was no precedent for a new trial in a penal action. But the court said the statute was not penal but remedial; and Sir WILLIAM BLACKSTONE observed, "The statute makes the winning of £ 10, at any one time or sitting, a nullity, and therefore gives the loser an action to recover back what still properly continues to be his own money."
In these cases the actions were not brought by an assignee, and they are cited to show that the court which decided them considered that money lost at play was a debt due from the winner to the loser, and, as such, a part of the estate of the latter. But, in Brandon et al. v. Pate (2 Hen. Black., 308), the loser became a bankrupt, and his assignees brought the suit *Page 31 
upon the statute of Anne within the three months; and the question was, whether the money could be recovered as a part of the bankrupt's estate. On the part of the defendant, it was contended, as it is now, that the statute only gave the action to the loser; that it was personal in him, and passed to another person (the common informer), if he did not, within three months, elect to sue in his own behalf; and, therefore, that until he so elected there was no debt or duty vested in him. After two arguments, it was held that the action could be sustained. HEALTH, J., observed that "the money lost was to be considered as part of the bankrupt's estate, which has wrongfully passed to the winner, and if so, the assignees have a right to it, and ought in reason to sue for it." ROOKE, J., said. "The meaning of the act is, that the money lost and paid to the winner is part of the property of the loser." So in Brandon v. Sands (2 Ves.,
514), a bill was filed in Chancery by the assignees of a bankrupt who had lost money at the game of faro, praying a discovery,c. A demurrer was put in by the defendant, on the ground that the assignees could not recover. But the Lord Chancellor overruled it, being of opinion, independent of the prior decision of the Court of Common Pleas in favor of such an action, "that nothing was so clear as that, when a statute gives an action to the party aggrieved, there is an interest vested in him." "The limiting the time," he observed, "is to let in the penal action by the common informer; but while the action rests in the party injured, it is a vested interest in him. It is not a personalright," c.
Upon principle, therefore, and upon these authorities, I am of opinion that the demand on which the suit was brought was capable of being assigned, and, consequently, that the action can be maintained in the name of the plaintiff, according to the Code of Procedure, which enables the party in interest to sue in his own name. One or two other questions were made on the argument; but they do not require a particular examination.
The judgment should be affirmed.
All the judges concurring,
Judgment affirmed. *Page 32