(18 Misc. Rep. 99.)

### STAUB v. HENRY et al.

(Supreme Court, Special Term, Erie County.   September, 1896.)

LOTTERIES—PENAL STATUTES—ARREST.
   1 Rev. St. p. 667, § 32, providing that any person who shall purchase a share in any illegal lottery may sue for and recover double the sum of money paid therefor is penal in its nature, and therefore warrants an order of arrest, under Code Civ. Proc. § 549, subd. 1.

Action by Frederick Staub against George Henry and others. Motion by defendants to vacate an order of arrest.   Denied.

C. J. Thomas, for the motion.
Leroy Andrus, opposed.

LAMBERT, J.   This is a motion to vacate an order of arrest heretofore granted against the principal defendants, under section 549 of the Code of Civil Procedure, subd. 1, as in an action for a penalty.   The defendants are charged with being associated together as proprietors of an extensive policy game, with conducting the same in the city of Buffalo, and with having received thereby from the plaintiff a large sum of money.   The plaintiff seeks to recover under section 32, pt. 1, c. 20, tit. 8, art. 4, of the Revised Statutes. That section provides (2 Rev. St. p. 1764, 9th Ed.) that:

"Any person who shall purchase any share, interest, ticket, certificate of any share, or interest or part of a ticket, or any paper or instrument purporting to be a ticket or share," etc., "in any illegal lottery may sue for and recover double the sum of money and double the value of any goods or things in action which he may have paid or delivered in consideration of such purchase," etc.

The sole question presented on this motion is whether or not this section creates a "penalty," as that term is understood in the Code, so as to warrant an order of arrest being granted under subdivision 1 of section 549.   That subdivision provides that an order of arrest may be granted where the action is brought "to recover a fine or penalty."   A careful examination of the briefs of counsel, and a somewhat extensive research on my part, fail to reveal any authority upon this question in this state.   The plaintiff seeks to establish his position by an analogy between this and cases arising under sections 12 and 15 of chapter 40 of the Laws of 1848.   The leading case decided under that chapter is Bank v. Bliss, 35 N. Y. 412, which was brought to charge the trustees of a corporation for the amount of a corporate debt, by reason of their omission to file an annual report, and the court said:

"The liability, it must be observed, is not limited to the injury or damage sustained by the creditors in consequence of the violation; but upon failure to file the report, or upon making a prohibited dividend, however small or trifling the

.amount, the trustees are subjected to the payment of the whole amount of the debts of the company then existing, or for all that shall be contracted. * * * These provisions appear to be severally punitive, inflicted, on ground of public policy, for the protection of creditors," etc.

Referring to this decision, Ruger, C. J., in Stokes v. Stickney, 96 N. Y. 326, says:

"Since that decision, the subject of actions under that section has frequently been under the consideration of this court, with the uniform conclusion that the actions therein provided for are penal in character, and are not in any respect based upon the theory of affording compensation to the injured party for damages ·sustained by reason of the omission complained of."

The last of this line of decisions (Gadsen ·v. Woodward, 103 N. Y. 244, 8 N. E. 653) says:

"We have repeatedly held that such an action is an action for a penalty or forfeiture." Bank v. Bliss, 35 N. Y. 412; Wiles v.·Suydam, 64 N. Y. 173; Easterly v. Barber, 65 N. Y. 252; Knox v. Baldwin, 80 N. Y. 610; Veeder v. Baker, 83 N. Y. 156; Pier v. George, 86 N. Y. 613; Stokes v. Stickney, 96 N. Y. 323; Gadsen v. Woodward, 103 N. Y. 242, 8 N. E. 653.

An examination of these cases shows that it is unlawful for the officers of a corporation to neglect to file a yearly report, or to make .a false report, etc.; that any one injured by this failure might maintain, independent of the statute, an action for actual injuries due to the unlawful act or omission. But the statute, as a punishment, .and in the interest of public policy, gives a right to recover a penalty from the officers who omitted to perform the requirements of the law, and the amount of the penalty is measured by the extent ·of the debts of the corporation. The contention of the plaintiff that these cases and the one at bar are analogous is sound. It is unlawful to conduct lotteries or raffles. Any one losing money in these games or practices might maintain, independent of the statute, an action as for money had and received, were it not for the theory that the parties are in pari delicto, and the plaintiff would not be heard. Meech v. Stoner, 19 N. Y. 26. But section 32 of the statute under consideration, as a penalty, and in the interest of public policy, gives a right to recover a penalty from the parties who were engaged in the unlawful practices, and the amount of the penalty is measured by twice the sum lost in the lottery or raffle.

The defendants contend that this statute does not so much create a right of action to recover back the money, as it removes the ·difficulties which obstructed the remedy at common law, and therefore no penalty is created. Meech v. Stoner, supra, is cited to sustain this position. This contention, however, as to section 32 of the statute, is hardly tenable, under the view of the case here adopted. Meech v. Stoner decides that the effect of section 14, which provides that "every person who shall, by playing at any game, lose twenty-five dollars, may within three calendar months .sue for and recover the money," etc., is simply to remove the disability the plaintiff was under at common law, by reason of the fact that the parties were in pari delicto, and the court would withhold its remedial processes from each. But section 32 of this stat-ute does more than section 14. The latter allows the loser to recover what was lost; the former, double what was paid, and double

costs. It cannot with seriousness be contended that half of this double recovery is given as "damages" for the detention of the loser's property. The laws regulating interest accomplish that. If not as damages, this excess recovery must be penal in its nature, and this view of the case is aided by the wording of the introduction to title 8 of this chapter, viz.: "Of the Prevention and Punishment of Immorality and Disorderly Practices." The whole recovery must needs be impressed with the penal character of the excess. The reason is that the whole creates but one cause of action; for it cannot be said that two actions could be maintained, —one for the loss, and one for a sum equal to the loss, by way of penalty or forfeiture. This view is not at variance with that expressed in Meech v. Stoner, supra; for, taking into consideration the language and purpose of the statute, there can be little doubt that the plaintiff could here have waived his right to recover double damages under the statute, and elected to sue solely for the loss, under section 32, in the same manner as actions are maintained under section 14, which creates no penalty. The defendants rely upon the case of Paper Co. v. White, 58 How. Prac. 172. This was an action against trustees for failure to file a report under chapter 40 of the Laws of 1848, and a motion for an order to arrest the defendant was made. This application was decided in 1879 at special term, and the decision of the learned justice went upon the theory that this was an action ex contractu, or possibly neither ex contractu nor ex delicto, but in any event not the latter, and not so strictly for a "penalty," as that term should be understood in subdivision 1, § 549, of the Code. Since that case the court of appeals has, in Stokes v. Stickney, supra, settled the matter by unequivocal language, and the Paper Co. Case can no longer be considered decisive authority upon this question. It is not indispensable to the creation of a penalty that it, in terms, be declared one. Any language from which the intention and purpose to impose a penalty can be fairly drawn meets the requirement of law, and is usually a specific sum of money exacted by way of punishment for an act of commission or omission. It is none the less a penalty because exacted for the benefit of an individual, rather than the people of the state, or a public officer, the test being whether it is intended to be remedial or punitive in character and purpose. The right declared to recover double the money paid in the purchase of lottery tickets could scarcely be regarded as wholly remedial, for that would be placing a premium upon the conduct of those aiding in the transgression of the law. If the party plaintiff had been the victim of highway robbery or larceny, his remedy would be limited to the amount actually lost, while here, as a result of his voluntary act, he is awarded double the amount of his loss. Such, we apprehend, is not the construction that was intended or should be placed upon the provisions of law under inquiry. The strenuous and persistent effort upon the part of the people, through constitutional provision and legislative enactment, since the early history of the state, indicate an unyielding purpose to stifle and exter-

minate the evils flowing from the conduct of private or public lotteries. The policy of the law, therefore, may be consulted to aid in fixing the purpose of the lawmaking power in the enactment of this statute. An interpretation should be given to it consistent with the evils sought to be remedied, as well as the language employed in the statute. The fair interpretation of this statute, therefore, is, to our mind, that it was not given as a remedy to a participant in its violation, but intended to inflict a punishment upon those inviting and permitting gambling of this character. That the statute is remedial, and an incident of its enforcement, or that the commission of the same act which gives this penalty subjects the offender to the charge of crime and punishment, is not controlling in fixing the penal character of the statute. Wilkinson v. Gill, 74 N. Y. 68. Having reached the conclusion that the action is one for a penalty, the plain and simple language of the Code makes the procedure clear. Inasmuch as the question is new, the motion to vacate is denied, without costs.

Motion denied, without costs.