# Court of Appeals.

### April, 1903.

## THE PEOPLE v. LEON STEDEKER.[1]

### (175 N. Y. 57.)

1. BETTING AND GAMING—POOL ROOM—PENAL CODE, SECTION 351—INDICTMENT MUST ALLEGE PRESENCE OF BOOKS AND PAPERS.

   A count in an indictment under section 351, Penal Code, for keeping and occupying a room for recording bets and selling pools on horse races is defective where it fails to allege that defendants kept and occupied a room with books, papers, apparatus or paraphernalia for the purpose of recording bets or wagers.

2. SAME.

   The indictment need not specify the particular house or building in which the defendants are charged with keeping and occupying a room for the purposes forbidden. It is sufficient that the indictment charged the facts constituting the offense and the place where it was committed as within the jurisdiction of the court.

[1] Reversing 75 App. Div. 449, 17 N. Y. Crim. Rep. 127.

3. SAME—WHERE ANOTHER PENALTY IS PROVIDED BY LAW.

Such an indictment is fatally defective in failing to aver that the rooms kept and occupied by the defendants were not on a race course authorized by statute, since the keeping of an establishment for gambling constitutes a felony under section 351, " except when another. penalty is provided by law," no other penalty therefor is prescribed by the Revised Statutes nor by section 343, that section embracing only cases not specifically provided for by section 351; but under the Racing Law, 1895, ch. 570, in the absence of an allegation that vouchers for bets or pools were ever delivered or intended to be delivered, or that defendants occupied and kept the room for that purpose, another penalty is prescribed by law which is both civil and exclusive, and, therefore, both the indictment and the proofs should negative the fact that the case comes within the exception.

APPEAL from an order of the Appellate Division of the Supreme Court in the First Judicial Department, made November 7, 1902, which reversed an order of the Court of General Sessions of the county of New York sustaining a demurrer to an indictment and overruled such demurrer.

The facts, so far as material, are stated in the opinion.

John R. Dos Passos and Benjamin Steinhardt, for appellants.

William Travers Jerome, District Attorney (Howard S. Gans and Joseph S. Auerbach, of counsel), for respondent.

Joseph S. Auerbach and Herbert Barry, for the State Racing Commission et al., intervening.

CULLEN, J.: The appellants were indicted for violating the provisions of section 351 of the Penal Code. The indictment contains three counts. The first charges the appellant with the crime of keeping and occupying a room for the purpose of recording and registering bets and wagers and of selling pools upon the result of horse races and other contingent events; the second with the crime of keeping, exhibiting and employ-

ing devices and apparatus for the purpose of recording and registering such bets and wagers and of selling pools; the third with the crime of keeping and occupying a room with books, papers, apparatus and paraphernalia for the purpose of recording and registering such bets and wagers and of selling pools. To this indictment the appellants demurred on the ground that it failed to state facts sufficient to constitute a crime. The principal objection urged by the appellants is that the section of the Penal Code referred to is unconstitutional and void because of the great difference between the punishment of offenses by that article when committed without the grounds of any racing association and that imposed by the Racing Law on the same acts when committed on the racing grounds. But the constitutionality of the Racing Law and of the provisions of section 351 of the Penal Code has been so recently affirmed by this court, the former in the case of People ex rel. Sturgis v. Fallon (152 N. Y. 1) and the latter in People ex rel. Weaver v. Van De Carr (150 N. Y. 439), that we deem it not necessary nor wise to reopen the discussion and shall confine ourselves to an examination of the objections to the form of the indictment.

It is contended that the first count is defective in failing to allege that defendants kept and occupied a room with books, papers, apparatus or paraphernalia for the purpose of recording bets or wagers. The objection is well taken. The statute makes the presence of the books or apparatus an essential ingredient of the felony defined by it. It is urged against all the counts that they are not sufficiently definite in that they fail to specify the particular house or building in the city of New York in which the defendants are charged with keeping and occupying a room for the purposes forbidden by the statute. This objection was not well taken. It is sufficient that the indictment charged the facts constituting the offense and the place where it was committed as within the juris-

diction of the court. (People v. Buddensieck, 103 N. Y. 487.) If there were any question as to the particular place where it is charged that the offense had been committed by which the appellants could be in any way misled or prejudiced in their defense, the remedy was by motion for a bill of particulars. (Tilton v. Beecher, 59 N. Y. 176.)

We are now brought to the serious question presented as to the form and sufficiency of the indictment. By section 351 it is enacted that any one who commits any one of the acts which are thereby forbidden " is guilty of a felony, except when another penalty is provided by law, and upon conviction is punishable by imprisonment in the State prison for a period not less than one year, nor more than two years or by such imprisonment, together with a fine not exceeding two thousand dollars." It will thus be seen that the forbidden acts do not constitute a felony in all cases, nor, in fact, in any case, unless there is no other penalty provided by law for their commission. The appellants contend that the acts charged against them are subject by other statutes to specific penalties.

The first claim is that the provisions of the Revised Statutes which authorize the recovery of money lost on a wager thereby create a penalty for the offense of gambling. The decisions of this court are to the contrary. In Meech v. Stoner (19 N. Y. 26), it was held that the claim for money so lost was assignable, and in Ruckman v. Pitcher (20 N. Y. 11), that the claim bore interest. Both decisions proceeded on the ground that the statute was remedial, not penal; that the statute having made wagers void the loser never parted with the title to his money and that his suit was to recover only his own. It is also to be observed that these provisions relate to the subject of betting or losing money at play or on a wager, not to the maintenance of a house or establishment for gambling, which, substantially, is the offense with which the defendants are charged. There has always been observed a distinction between betting or

gambling and maintaining a gambling house or a place to which people resorted to gamble. While at common law wagers on indifferent subjects were legal and might be enforced, a gambling house or a resort for gamblers was a public nuisance, for which its keeper might be indicted. (Wharton Crim. Law, sec. 2446.) The same distinction has obtained in this State where ordinary betting has never been made a crime, though in some cases subject to small pecuniary mulcts, while the keeping of a gambling house, selling lottery tickets and the profession of a common gambler have been subjected to severe punishment.

It is next contended that section 343 of the Penal Code prescribes a penalty for the appellant's offense by enacting "that any one who shall keep a room, shed," etc., "to use for gambling, or for making wagers made to depend upon any lot, chance," etc., "shall be guilty of a crime." Doubtless bookmaking, poolselling and like acts enumerated in section 351 are merely species of gambling, and the terms of section 343, if the section stood alone, would comprehend these offenses. But it must be borne in mind that the three statutes were passed on the same day, May 9, 1895. The first of these (Chap. 570) enacted the Racing Law; the second (Chap. 571) amended section 343 of the Penal Code so as to present it in its present form, and the third (Chap. 572) similarly modified section 351 of the Penal Code. These two sections of the Penal Code must be construed in harmony; otherwise the latter section would be rendered substantially ineffective. Thus interpreting the sections, we think that section 343 must be held to embrace only cases not specifically provided for by section 351. So construed, section 343 does not prescribe any penalty for those offenses.

We are now brought to a consideration of the effect of the Racing Law upon the provisions of section 351. While, as was said in People ex rel. Sturgis v. Fallon (supra), we can-

not presume that this law was enacted to evade or defeat the
provisions of the Constitution, that no poolselling, bookmaking
or other kind of gambling shall be authorized or allowed within
the State, still the provisions of that law must be most care-
fully examined, since, though they do not authorize certain
kinds of gambling on the race course (the Constitution would
forbid that), they punish it with merely a civil liability, while
the same gambling under other circumstances or at other places
than the race track is made a felony.   It is a matter of the
greatest concern to the offender whether he is merely liable
to be sued for the amount of the bet or wager, or may be im-
prisoned in the State's prison and rendered infamous as a felon.
This great difference in punishment is based upon but slight
distinction in the offense, and, therefore, it is necessary to
ascertain with exactitude what elements constitute one offense
and what the other, in order to determine whether the acts
charged against the appellants are, or under certain circum-
stances may be, under the terms of the Racing Law subject
to the exclusive penalty provided by that act, to wit, a loss of
the amount of the wager, or not.   The subject of betting on
racing grounds is dealt with by sections 17 and 18 of the act
mentioned.   By section 17 any person who, on an authorized
race course, makes or records any bet or wager on a contest
taking place on such course forfeits the amount wagered or
received by him, to be recovered in a civil action by the
person with whom the wager is made.   The penalty is made
exclusive of all others prescribed by law, except in case of
" the exchange, delivery or transfer of a record, registry,
memorandum, token, paper, or document of any kind what-
ever as evidence of any such bet or wager or the subscribing
by name, initials or otherwise, of any record, registry or memo-
randum in the possession of another person of a bet or wager,
intended to be retained by such other person or any other
person as evidence of such bet or wager."   By section 18 a

similar provision for an exclusive penalty is imposed upon any one who makes or records any sale or purchase of any pool or interest therein on any contest taking place on the course. It will thus be seen that the effect of these two sections is to relieve any person who either makes or records a bet, wager or pool upon the racecourse from any liability to punishment except the recovery by the other party of the money bet or deposited. There is but one qualification on this exemption, that no record or registry of the bet shall be delivered to the other party or to some third person for him. In other words, the question whether the offender is a felon or not depends upon whether he delivers, what I may term, a voucher or evidence of the bet to the other party. If he abstains from this he may bet, wager and sell pools on the races and record and register the same free from other liability than the civil penalty.

The learned counsel for the racing commission, who has filed an intervening brief, claims that the Racing Law does not cover or include the acts charged against the defendants in two respects. First, he urges that this law does not authorize the keeping and employment of apparatus for recording bets and wagers. I am at a loss to see on what ground this proposition can stand. The statute in express terms includes the recording of bets, wagers and pools. How is it possible for one to record a bet without apparatus for recording the same? Is he to be a felon for having his book or papers prepared for the entry of his bets and to be subject only to the loss of the wagers when he actually enters them? If authority is wanted, the question would seem to be decided in the Fallon case. There it appeared that the defendant, with his clerk, attended the race track, making bets which his clerk entered in books or on papers conveniently ruled for the purpose, yet it was held that he had not committed an offense, since he had not delivered any voucher of his bets.

The learned counsel next argues that the Racing Law does not cover the case of one who, even on the racecourse, maintains a room or stand for the purpose of making and recording wagers or selling pools, though the penalties of the criminal law are relaxed in favor of the itinerant or ambulatory gambler. This distinction rests on a more substantial basis than at first thought might be accorded it. The difference is, to some extent, analogous to that which obtains between betting or gambling and keeping a gambling house. So in England (Powell v. Kempton Park Race Course Co., Law Rep. App. 1899, p. 143) it has been held that what the court was pleased to designate as "peripatetic" betting did not constitute an offense under a statute which was aimed against keeping places for betting. It was there said that while it was unnecessary to fall within the statute that the place should be covered in or form part of a building, still that it must be localized, though under a tent or even under an umbrella might be sufficient. "It is only the opening, keeping or using of a place for the carrying on of a betting business that is illegal." But this doctrine has no application to the present case. While under the English act the "opening, keeping or using of a place for the carrying of a betting business is illegal," that is the very thing that under our statute a racing association is authorized to allow. The concluding sentence of section 17 is as follows: "A corporation or association authorized by or entitled to the benefits of this act conducting a running or trotting or steeplechase meeting shall have the right to charge increased or additional entrance fees for admission to any special portion or portions of the grounds of such corporation or association, unless such poolselling or bookmaking as is punishable by fine or imprisonment or other acts so punishable be thereon authorized or knowingly permitted." *Expressio unius est exclusio alterius*. The association is, therefore, directly authorized to charge an addi-

tional entrance fee for admission to a special part of its grounds set aside for occupation by or for the business of poolsellers and bookmakers, of course, always provided that the bookmakers or poolsellers do not deliver vouchers of their transactions. This is exactly the localized betting which the English law would condemn as criminal. It needs no argument to show that a bookmaker or poolseller cannot be a felon in occupying or keeping the place which the association is authorized by law to charge for furnishing to him, or that " any special portion or portions of its grounds " includes portions of buildings or structures thereon.

There is no allegation in the indictment that vouchers for the bets or pools were ever delivered or intended to be delivered, or that the defendants occupied and kept the room for that purpose. It will, therefore, be seen that whether under the facts alleged in the indictment the defendants were guilty of a criminal offense, depends entirely on whether the place where the acts were committed was on the grounds of a race course or not, as to which the indictment is silent.

The last question involved in the case is whether it was necessary for the indictment to negative the fact that the defendants' acts were done on a race course. As already quoted, the section enacts that the offender is guilty of a felony " except when another penalty is provided by law." While the rules of criminal pleading are often technical, still, nevertheless, some of them are very well settled. Mr. Wharton states the rule (Crim. Law, sec. 378) : " If provisos and exceptions are contained in distinct clauses it is not necessary to state in the indictment that the defendant does not come within the exceptions or to negative the proviso it contains. . . . For all these are matters of defense which the prosecutor need not anticipate, but which are more properly to come from the prisoner. . . . If the exceptions themselves are stated in the enacting clause it will be necessary to negative them in

order that the description of the crime may in all respects correspond with the statute." Such is the rule in this State. In Harris v. White (81 N. Y. 532), Judge FOLGER said: "And here comes in a thing to which we have already adverted, that this part of the act giving effect to these special laws is embodied in the enacting clause of the act itself; it is an exception from that enacting clause, and not a proviso following it. Now, an exception in a statute must be negatived in pleading, while a proviso need not. Where an exception is incorporated in the body of the clause of the statute he who pleads the clause ought to plead the exception." In Jefferson v. People (101 N. Y. 19) Judge DANFORTH said: " It is well settled that if exceptions are stated in the enacting caluse it would be necessary to negative them in order that the description of the crime may correspond with the statute, but if there be an exception in a subsequent clause or subsequent statute that is a matter of defense to be shown by the defendant." In Rowell v. Janvrin (151 N. Y. 60) Judge O'BRIEN said: " In stating a cause of action arising upon a statute it is an ancient rule that where an exception is incorporated in the body of the clause of a statute he who pleads the clause ought to plead the exception. But where there is a clause for the benefit of the pleader and afterwards follows a proviso which is against him, he may plead the clause and leave it to his adversary to show the proviso. This rule of pleading has been followed and applied in a great variety of cases arising upon statutes and contracts to this day. . . . When we bear in mind the reason of the rule and the necessity for pleading the negative, it is not very important to deal with the somewhat vague and shadowy distinctions which are to be found in the books between an exception and a proviso. But the distinction, however difficult to state, has always been recognized." The theory on which the decision in Fleming v. People (27 N. Y. 329) proceeded is not in conflict with the rule stated. In that case the defendant was

indicted for bigamy under a statute which declared that every person having a husband or wife living who should marry another person, " except in the cases specified in the next section, shall be guilty of bigamy." (2 R. S. 677, sec. 8.) The next section provided for cases where the former husband or wife was absent for five years without being known to be living; where the former husband and wife had been divorced or the marriage annulled, or where either husband or wife had been sentenced to imprisonment for life. The indictment did not negative these exceptions. Judge DENIO thought the indictment defective but cured after trial and conviction of the defendant by the Statute of Jeofails. Judge EMMOTT, with whom a majority of the court agreed, thought the indictment good, but placed his decision on the ground that the clause in the section referred to was in the nature of a proviso instead of an exception, for the reason that the defendant was bound to prove the circumstances which took his case without the statute.

In the present case not only is the exception in the heart of the enacting clause, but the case is a stronger one for the defendants than any I have been able to find in the books. The exception is not one which relieves the act charged from being an offense if committed under particular circumstances or by particular persons. If the defendants kept a poolroom or recorded bets they are offenders whether those acts were committed on the race track or elsewhere, for we have held that it must be presumed to have been intended by the Racing Law to punish the offense, not to condone it. In the case of a proviso a defendant may be required to prove the particular facts which relieve him from the penalty of the statute, but I know of no principle by which a defendant can be indicted for crime and the burden cast on him of proving the particular offense of which he is really guilty. I imagine that where an act may fall under several penal statutes depend-

ing on attendant circumstances which determine whether it is included in one or the other, it is necessary for the prosecution to both allege and prove facts which bring it within a particular statute. In People ex rel. Weaver v. Van De Carr (supra), referring to section 351, Judge MARTIN said: " The provisions of that section are to the effect that it shall apply only in cases where no other penal law is applicable. The purpose of that provision was not to make existing laws applicable in the cases mentioned therein, but to exclude from its operation such cases where other provision had been made. No other existing law is made a part of that statute. Its provisions exclude from its operation all acts where a different penalty has been provided." If this be the true construction of the section it seems to me quite plain that the prosecution was bound to negative both in pleading and in proof any facts and circumstances which in law subjected the acts done to other penalties. The indictment is fatally defective in failing to aver that the rooms kept and occupied by the defendants were not on a race course authorized by statute.

The order of the Appellate Division should be reversed and that of the General Sessions affirmed, and the appellants discharged from custody, with leave to the district attorney to make an application to the court below for a resubmission of the case to the grand jury.

PARKER, Ch. J., O'BRIEN, MARTIN, VANN, WERNER, JJ. (and GRAY, J., in result), concur.

Order reversed, etc.