## COUNTY COURT — KINGS COUNTY.

### August, 1922.

## THE PEOPLE v. SAMUEL MOSKOWITZ.

(119 Misc. 837.)

(1) MANSLAUGHTER—WHEN BILL OF PARTICULARS AND INSPECTION OF MINUTES OF GRAND JURY GRANTED.

In a proper case the district attorney may be required to give a bill of particulars as to the offense charged in an indictment.

Where the grand jury hands down separate indictments charging defendants, in connection with the collapse of a theatre, of manslaughter in the first degree on the first count and manslaughter in the second degree on the second count, the defendants who are respectively the owner, iron contractor, and building inspector of the theatre, are entitled to a bill of particulars of the laws of the State of New York and of the provisions of the Building Code and of the ordinances of the city of New York with which they failed to comply and also of the several and separate acts of nuisance which it is intended to prove as charged in the indictment and also of the causal acts committed by defendants which contributed to the deaths of the people killed in the theatre's collapse.

(2) SAME.

It appearing that there was a John Doe proceeding in the matter at which much incompetent evidence was received and that later indictments were found upon the testimony of six only of the seventeen witnesses called before the magistrate, an examination of the grand jury minutes will be permitted the defendants.

Motion to inspect the minutes of the grand jury.

*John E. Ruston, District Attorney (Ralph E. Hemstreet,* assistant), for People.

*Meyer Steinbrink,* for defendant Moskowitz.

*Richards, Smyth & Conway,* for defendant Gaydica.

*Frederick S. Martyn,* for defendant Finlay.

McLaughlin, J.:

On the 29th day of November, 1921, an appalling catastrophe happened in this county of Kings in the collapse of a certain building known as the American Theatre, on Bedford avenue, then in course of construction. The fall of this building resulted in the death of at least two persons, Isaac Baskin and Philip Stein. On the 18th day of March, 1922, separate indictments in precisely the same language were found by the grand jury of the county of Kings charging Samuel Moskowitz with the crime of manslaughter in the first degree on the first count and manslaughter in the second degree on the second count, the one as the result of the killing of said Baskin and the other as the result of the killing of said Stein.

The defendant moves as to both indictments for an order permitting the inspection of the grand jury minutes upon which the said indictments were returned and for a bill of particulars of the sections of the Building Code or other statutes or ordinances alleged to have been violated and stating also the particular acts of the defendant alleged to have been contrary to law and the acts alleged to have been committed by him which caused or contributed to the deaths of the persons mentioned in the said indictments and for such other and further relief as may be just.

Similar motions are made in behalf of one Gaydica and of

one Finlay, both indicted in connection with said killings upon indictments in precise language with that of the indictments here, and such motions are, of course, directed to the respective indictments found against them. The defendant here is the owner of the property. Gaydica is the iron contractor and Finlay the building inspector. Obviously the duties or obligations cast upon these defendants by statute or even under the common law in respect of the erection of the building, design, plan, workmanship, materials, labor, supervision, observation of plan, may be essentially different, and whereas one by course of conduct or otherwise might offend in some particular the law, some particular statute, ordinance or provision of the Building Code, another would not. The language in the indict-, ment is general in its charges and is also suggestive of duplicity. One alleged act of commission or omission set forth in the indictment might justify a misdemeanor or felony charge under one statute or ordinance while another may be so defined under another statute or ordinance. While the district attorney might elect and thus save duplicity the defendant here is entitled to reasonable notice of the particular charge which he will be called upon to answer and to prepare his answer and it must plainly appear upon the indictment and the record of what offense he is charged. This the indictments here do not sufficiently do. I am mindful of those decisions which in the ordinary cases of negligence decline to order particulars as to statutes or ordinances alleged to have been violated but they do not apply here. The defendant must not be sacrificed, a victim of public clamor. Due regard to his rights and privileges and those of the community in the last analysis requires that the accused be given every proper opportunity to defend himself.

The indictments in the instant case charge neglect to comply with the laws of the State of New York, the Building Code of the city of New York and the ordinances of the city of New York, yet the learned district attorney earnestly contends that

the defendant may be prosecuted thereunder upon the theory of commission of what has come to be known as a common-law nuisance.

It is not necessary for the purpose of decision of this motion that this question of law be passed, and it is mentioned only as further showing the involved nature of the charges. The learned district attorney contends that there is no power in the courts of this State to order a bill of particulars in a criminal case and points out that while the Civil Practice Act provides specifically for bills of particulars in certain kinds of civil actions there is no such practice provided for in the Code of Criminal Procedure. In Tilton v. Beecher (59 N. Y. 176, 184), the Court of Appeals says: " A bill of particulars is appropriate in all descriptions of actions where the circumstances are such that justice demands that a party should be apprised of the matters for which he is to be put on trial with greater particularity than is required by the rules of pleading." Even in criminal cases the instances in which the courts have, by analogy to the practice in civil cases, ordered bills of particulars, are frequent, viz., on an indictment for being a common barrator, where a general form of pleading is allowed. (Hawk. Pl. Cr., book I, chap. 81, § 13; Goddard v. Smith, 6 Mod. 261; Commonwealth v. Davis, 11 Pick. 432.)

On an indictment for nuisances the prosecutor has been required to specify particulars of the separate acts of nuisance which he intended to prove. (The King v. Curwood, 3 Ad. & El. 815; Regina v. Flower, 3 Jur. 558.) But this case was decided in 1874 and this point was but *obiter dictum*. The Code of Criminal Procedure took effect September 1, 1881, being chapter 442 of the Laws of 1881, section 963 of the Code of Criminal Procedure. This Code provides for no such practice as the ordering of a bill of particulars but the practice prevailed at common law. (See cases above cited.) From the case of Commonwealth v. Snelling (15 Pick. 321), a Massachusetts case, it may be said " that where, in the course of a suit, from

any cause a party was placed in such a situation that justice could not be done at the trial without the aid of information to be obtained by means of a specification or bill of particulars, the court, *in virtue of its general authority to regulate the conduct of trials,* had power to direct such information to be seasonably furnished." Rapallo, J., in Tilton v. Beecher (*supra*). This Massachusetts case was a criminal prosecution for libel and the authorities cited, although in civil cases, were by analogy and principle applied.

In 1903, twelve years after the adoption of the Code of Criminal Procedure, the Court of Appeals in People v. Stedeker (175 N. Y. 57, 61), by Cullen, J., said: " If there were any question as to the particular place where it is charged that the offense had been committed by which the appellants could be in any way misled or prejudiced in their defense, the remedy was by motion for a bill of particulars." Again in People v. Corbalis (86 App. Div. 531), decided also in 1903, the Appellate Division, Second Department, upon a demurrer to an indictment, held that the indictment stated facts sufficient to constitute a crime and sustained the indictments, saying: " It must be considered as now settled that if these defendants believe that they are insufficiently advised as to the particular facts that will be proven to make out against them a case under the statute, their remedy is by a bill of particulars." (Citing People v. Stedeker, *supra;* Tilton v. Beecher, *supra;* Whart. Crim. Pl. & Pr. [8th ed.] § 702.) This case was reversed on appeal (People v. Corbalis, 178 N. Y. 516), and the demurrer sustained instead of the indictment, the court saying that the indictment would state the acts constituting the crime and that the defendant should not be subjected to the uncertainties of a motion for a bill of particulars. The power of the court to order such a bill was expressly recognized (pp. 522, 523).

The Code of Criminal Procedure should not be deemed to have changed the rules of the procedure which previously existed, unless the language of these provisions clearly compels

such decision. (People v. Wilson [1897], 151 N. Y. 403, 409;
People v. Palmer [1888], 109 id. 110; People v. Adler [1893],
140 id. 331, 335.) It is not to be deemed to have limited the
power of the courts in practice or procedure beyond the scope
of its provisions. (People ex rel. Weeks v. Platt [1916], 173
App. Div. 451.) I find no provision in the Code of Criminal
Procedure expressly changing the rules of procedure or limit-
ing the power of the courts in respect of granting bills of
particulars.

The motion for a bill of particulars is granted and the dis-
trict attorney is required to serve upon the attorney for the
defendant a bill of particulars of the laws of the State of New
York, provisions of the Building Code of the city of New York,
and ordinances of the city of New York with which the defend-
ant failed to comply and also of the several and separate acts of
nuisance which he intends to prove as charged in the indict-
ment, and this within ten days after the service upon the
district attorney of a copy of the order made and entered on
this motion.

The defendant ably argues that the guilt which arises from
culpable negligence must grow out of the personal responsibility
of the defendant for doing or not doing the acts complained of,
claiming that guilt is personal, and while in civil actions one
may be held to liability on the theory that his agents' and
servants' acts bind him, no such principle governs the adminis-
tration of the criminal law, and goes on to ask particulars of
the causal act or acts alleged to have been committed by him
which caused or contributed to the deaths of the persons men-
tioned in the said indictment. The contention is well founded
and the bill of particulars as ordered will include particulars of
such causal act or acts so far as they can be given.

Turning now to that part of the motion which has to do with
the examination of the grand jury minutes. On the 17th day
of January, 1922, and before the action of the grand jury, the
district attorney conducted a public hearing which was held by

Chief Magistrate McAdoo as a "John Doe" proceeding. At that hearing interested persons were allowed to testify only upon waiving immunity. Counsel was permitted only by courtesy and was limited in cross-examination to his own client. There was no opportunity to cross-examine other witnesses and the indictments were had without the defendant having the usual preliminary opportunity to cross-examine his accusers.

The hearing was begun on January 17, 1922, and 1,100 pages of testimony were taken. On March 15, 1922, the magistrate rendered his decision, announcing that he would receive a complaint under section 1052 of the Penal Law against certain persons, including this defendant. The magistrate further said " as this inquiry has been of a public nature, it is the privilege and right of the district attorney to present the facts of this case to the grand jury without further intervening magisterial action if he so desires." This was done by the district attorney. On the morning of March 18, 1922, the defendant was arraigned to plead to these indictments found within two days. Seventeen of the witnesses whose names appear upon the indictment had previously testified before Magistrate McAdoo in the " John Doe " proceeding and six had not. Of these six one was the official stenographer in the said " John Doe " proceeding. The other five could not have testified differently or to greater extent than the seventeen. They could not in themselves have furnished sufficient relevant or competent evidence in itself sufficient to sustain the indictment without the evidence of the seventeen. The minutes of the " John Doe " proceeding were not secret. The hearings were public and the proceedings were given general publication. Seventeen of the twenty-three witnesses went before the grand jury as did the stenographer who took the testimony, he being one of the twenty-three. What did he testify to or could he have testified to other than portions of the minutes of the " John Doe " proceeding? Then, too, into the " John Doe " minutes were read ex parte statements not under oath made by Mosko-

witz, Gaydica and Finlay.   The situation of each is so dis-
similar from another that there is no basis for so using such
statements.   Statements of other witnesses were read into this
record and the names of the stenographers who read them are
indorsed upon the indictment as witnesses.

The Code of Criminal Procedure provides that the grand
jury may hear none but legal evidence, such as is given by
witnesses produced and sworn before them, or furnished by
legal or documentary evidence, or a proper deposition of a wit-
ness.   The record on the " John Doe " proceeding abounds in
incompetent and irrelevant evidence.   It is impossible to say
how much of this has crept into the grand jury minutes.   I
consider the situation here, but for the dread details, to be
analogous to that in People v. Wood (93 Misc. Rep. 701), in
which Judge Wadhams wrote the opinion.   The motion here
is made in good faith as in the instance of the case before him.
The motion to inspect the minutes of the grand jury is made
for the purpose of enabling the defendant to make a motion to
dismiss the indictment made upon the grounds established by
the Court of Appeals in People v. Glen (173 N. Y. 395), Peo-
ple v. Sexton (187 id. 495), namely, that the evidence received
by the grand jury was insufficient to support the indictment or
that illegal evidence is the sole basis for the indictment.   Here
as there the moving papers and " John Doe " minutes show to
the court so far as is possible without an inspection of the grand
jury minutes, what the testimony of the witnesses was, or as the
defendant contends, must have been before the grand jury.
The testimony of seventeen of the witnesses who appeared
before the grand jury, relative to the charge made in the indict-
ment, were presented to the court and carefully considered.

A quotation from People v. Wood (supra), pages 703-705:
" It is contended by the district attorney that there is no pre-
sumption that the testimony given by the witnesses before the
grand jury was the same which they gave before the legislative
investigating committee (citing People v. Martin, 87 App. Div.

487, and People v. Sweeney, 213 N. Y. 37), and that the court must assume that the evidence before the grand jury was sufficient to support the indictment. In the Martin case the defendant made a motion to dismiss the indictment based upon affidavits setting forth that the same witnesses had been called before the grand jury who had testified in the Magistrate's Court, and the court said: 'The assertion that the evidence before the grand jury who found the indictment was none other than that which was produced before the police magistrate is only an assumption. It is a conclusion drawn from what the affiant conceives to have been the situation before the grand jury. He was not acquainted with what took place in the grand jury room; * * *. There is no legal proof presented on this motion of what evidence was before the grand jury and the presumption is that they acted upon sufficient and competent evidence.' As said in People v. Glen (173 N. Y. 395): 'The presumption is that an indictment is based upon legal and sufficient evidence until there is satisfactory proof to the contrary.' That proof is not furnished simply by an argument contained in an attorney's affidavit that because insufficient evidence was presented to a police magistrate, other and sufficient evidence was not presented to the grand jury. In People v. Sweeney (*supra*), upon appeal from final judgment, in reviewing the denial of defendant's motions to inspect the minutes of the grand jury and to dismiss the indictment, where the testimony given before the grand jury was not before the court, it was, in effect, held that the evidence must be presumed to be sufficient to sustain the indictment. The court said, at page 45: 'The grand jury necessarily decided in this case that the evidence before it taken together was such as in its judgment would if unexplained and uncontradicted warrant a conviction by the trial jury. If the evidence taken before the grand jury was sufficient if unexplained and uncontradicted to warrant the conviction of the defendant by the trial jury the indictment was properly found. Nothing in the moving affidavits or at the

trial shows what testimony was received by the grand jury other than as shown in the indictment. It rests in assumption (People v. Martin, 87 App. Div. 487).

" ' It has nowhere appeared that the evidence. before the grand jury showed that the witnesses who gave evidence before them and all of them were accomplices or that the indictment was not founded upon evidence that unexplained and uncontradicted would justify the conviction of the defendants by the trial jury. We are, therefore, of the opinion that no error was committed by the court in its refusal to dismiss the indictment.'

" The motions in the cases cited were both motions to dismiss and were made without an inspection of the minutes. The motion in this case is. to obtain a copy of the minutes of the grand jury to present to the court on the motion to dismiss. Neither of the cases cited is an authority for the proposition that a defendant, upon making an application for an inspection of the minutes of the grand jury, may not call to the attention of the court the testimony given by witnesses at other proceedings as pertinent to his application for an inspection of the minutes of the grand jury. He cannot know, without such inspection, what the witnesses testified to before the grand jury, but as bearing upon his application he may show to the court what the witnesses have, up to the time of being called before the grand jury, said with respect to the subject matter of the indictment."

The question of whether accomplice testimony was before the grand jury is not before me to decide. Judge Wadhams further says, in the Wood Case (*supra*), at page 707: " The precise question presented upon a motion to dismiss is whether the evidence before the grand jury was sufficient to warrant a conviction of the defendant by a trial jury. That question can be determined only after an inspection. It is sufficient to hold that by the affidavits presented the defendant has shown cause, under the established rule, for the granting of the motion to inspect the minutes."

I agree that People v. Sweeney (213 N. Y. 37) in effect establishes that in order that a defendant may succeed in a motion to quash an indictment upon the ground of insufficient or incompetent evidence, he must address to the judge all of the evidence submitted to the grand jury. People v. Glen (*supra*), People v. Sexton (187 id. 495, 511), People v. Borgstrom (178 id. 254, 258) sustain this view.

In the event of the minutes showing insufficient legal testimony, or that the indictment rests solely upon incompetent testimony, the defendant's constitutional rights have been invaded within the meaning of section 313 of the Code of Criminal Procedure. (Matter of Montgomery, 126 App. Div. 72; People v. Jakeway, 88 Misc. Rep. 124; People v. Klaw, 53 id. 158.)

Without further resume of the authorities for and against the granting of a motion to inspect the grand jury minutes, I am satisfied that the defendant here should have the benefit of that substantial right in order to predicate thereon motions for the dismissal of indictments. Motions for a bill of particulars and for an inspection of the grand jury minutes granted as herein indicated. Settle order on notice.

Ordered accordingly.