MICHAEL T. WATTS, Appellant, *v.* JOHN B. MALATESTA and Another, Respondents, Impleaded with WESTCHESTER RACING ASSOCIATION and Others, Defendants.*

First Department, December 20, 1932.

*John Caldwell Myers* of counsel [*John F. Keating* with him on the brief; *Myers, Treanor & Keating*, attorneys], for the appellant.

*Philip A. Brennan*, for the respondents.

SHERMAN, J. Plaintiff sues defendants John B. Malatesta and J. B. Malatesta, Inc., to recover moneys lost as wagers upon horse races and relies for success upon the provisions of section 994 of the Penal Law. To show the extent of his losses plaintiff produced at trial the original checks drawn by him to the order of defendant Malatesta, which, it is clear, were received and cashed by, or in the interest of, that defendant. Defendant Malatesta pleads a counterclaim for moneys lost by him as wagers upon horse races, and paid over to plaintiff. The trial court (a jury having been waived) found in favor of said defendants upon the counterclaim. Inasmuch as the amounts claimed to have been paid by Malatesta to plaintiff (as found by the trial court) far exceeded the aggregate

---

* Affd., 262 N. Y. 80.

of payments to him, the judgment appealed from is in defendants' favor in the sum of $101,223.41 against plaintiff. It runs to both defendants jointly, although only one of them pleaded a counterclaim, and there is no evidence at all that the corporate defendant ever paid any moneys whatsoever to plaintiff. Indeed, in so far as defendant J. B. Malatesta, Inc., is concerned, the proof does not show that it was actually involved in the questioned transactions mentioned in the pleadings; accordingly the only judgment to which it can be entitled in any event is the dismissal of plaintiff's complaint.

With respect, however, to the individual defendant, Malatesta, who claimed at first that he was merely a news distributor, occasionally at the race track, the evidence clearly establishes that he was a bookmaker, engaged in that occupation at various race tracks and elsewhere in direct violation of section 986 of the Penal Law, which makes bookmaking a crime. In the course of such prohibited conduct he made the wagers which form the subject-matter of the complaint and also those upon which he relies to sustain the judgment which has been accorded to him upon the counterclaim. If the judgment appealed from be upheld, the court will actually have countenanced the infraction of the Penal Law and have come to the aid of a lawbreaker, to restore to him that which he lost while engaged in the commission of acts specifically condemned by section 986 of the Penal Law.

This action is, as above stated, grounded upon section 994 of the Penal Law, which is as follows: " Property staked may be recovered. Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not."

That section, as well as a number of others, is found in article 88 of the Penal Law, all of which were enacted to make effective the legislative purpose of suppressing gambling in the community, when conducted in the manner therein described. The chief object of section 994, in according a remedy to a person who delivers either money or property upon a wager, was to deter those against whom these enactments were directed from pursuit of the prohibited practices. While it may not, in and of itself, create a penalty (*People* v. *Stedeker*, 175 N. Y. 57, 62), it adds a further hazard to illegal gambling. It was not made into law for the benefit of the

lawbreaker and was not intended to enable a bookmaker to recover the sums which he may have paid out upon wagers taken by him in violation of the penal statute. He must bear the consequences of his law breaking and may not rely upon the statute for reimbursement of his losses. Accordingly, without further inquiry as to the sufficiency of the evidence in support of his counterclaim, we are bound to hold that the individual defendant has shown no cause of action under the statute upon which a judgment in his favor against plaintiff can be sustained.

At common law wagering contracts were not void *per se* (*Zeltner v. Irwin*, 25 App. Div. 228), and an action could be maintained thereon if the wager was not deemed immoral or repugnant to sound public policy. (*Bunn v. Riker*, 4 Johns. 426; *People v. Stedeker*, 175 N. Y. 57, 62; 3 Kent Comm. [10th ed.] 377–379.) However, prior to the enactment of statutes relating to various forms of betting and gaming, there was a disposition by courts to limit the common-law rule by invalidating wagering contracts on account of the subject-matter. (*Campbell v. Richardson*, 10 Johns. 406, 407; *Nellis v. Clark*, 4 Hill, 424, 426.) Wagering agreements came to be generally held opposed to public policy. If the loser in a wagering contract paid the winner, he was debarred from recovering the payment because he was *in pari delicto*. (*Like v. Thompson*, 9 Barb. 315, 316; 3 Williston Cont. §§ 1667, 1679.) Later, statutes were enacted to discourage wagering contracts by nullifying obligations which arose under them.

In this State, under the earlier anti-gambling laws, which evidence the public policy against gaming or betting on horse races, neither party could sue the other because each was regarded as being *in pari delicto*, and, therefore, not entitled to recover of the other. (*Meech v. Stoner*, 19 N. Y. 26.) Under the maxim "*In pari delicto potior est conditio defendentis*," it was there held (p. 28): "The parties are left where the law finds them, and the defendant prevails, not upon his own merits or title, but because the plaintiff is deemed unworthy to be heard in the particular case."

Statutes giving to the loser a right of action to recover a loss in specified gambling ventures were remedial (*Stuart v. Grattan*, 217 App. Div. 336, 337); the party protected thereunder was not regarded as *in pari delicto* with the other, who was held to be also *particeps criminis*. (*Irwin v. Curie*, 171 N. Y. 409, 412, 414; *Duval v. Wellman*, 124 id. 156, 160.) Statutes such as section 994 of the Penal Law remove the difficulty which obstructed the remedy. (*Meech v. Stoner, supra; Ruckman v. Pitcher*, 20 N. Y. 9, 13.) It is only by virtue of the provisions of section 994 of the Penal Law that plaintiff has a cause at all. Defendant, whose acts are tainted with

criminality, has, as has been stated, none, for his criminal conduct destroys the right of action; as to him, section 986 of the Penal Law, by making bookmaking a crime, re-erected the barrier. Plaintiff, on the other hand, has committed no crime in making the wager and in delivering to defendant, in payment of his losses, the checks in evidence. The statute clearly intended that he should recover the amounts paid by him.

We are urged to follow the conclusion reached in *Elias & Shepherd* v. *Gill* (92 Ky. 569), where the plaintiff sued defendants, who ran a betting pool, to recover moneys which he had lost to defendants in bets upon horse races and defendants had counterclaimed for a larger sum, alleged to have been lost and paid over by them to plaintiff. It was there held that the losses of defendants would be of avail as an offset to the extent of defendants' liability to plaintiff but not so as to afford affirmative recovery in defendants' favor upon a cross claim. Here the losses, if any, sustained by defendant were the direct result of his criminal acts and the court may not come to his relief. This rule was well exemplified in *Murray* v. *Interurban Street Railway Co.* (118 App. Div. 35), where a plaintiff injured in an accident was held disentitled to a recovery of what he would have earned in the active employment of a bookmaker for whom he was working at the time of the accident, Judge McLAUGHLIN saying (at p. 37): " The plaintiff according to his own testimony was violating the law, and when a person is committing a crime he cannot use the wages paid to him for doing it as the basis for a recovery in a civil action. (*Riggs* v. *Palmer*, 115 N. Y. 506.) No one would contend that if a pickpocket should have his hands cut off by the negligence of another that the amount which he realized in that pursuit prior to the injury could be used as the basis of damage, nor would any one contend that a burglar if injured by the negligent act of another, which prevented his following his criminal career, could use the amount which he had theretofore realized as the basis of a recovery, and yet in either instance they might just as well be resorted to as the evidence admitted in the case before us. In such case the person would be engaged in doing acts which the statute prohibits, and while they would be of different degrees they would be criminal nevertheless."

No substantial question of fact remains, for defendant's employee, Young, corroborated plaintiff and testified that the plaintiff's checks in evidence were received by defendant in payment of bets.

The judgment and order dismissing the complaint should be reversed, with costs to the appellant against the defendant John B. Malatesta, and judgment directed in favor of the defendant

J. B. Malatesta, Inc., dismissing the complaint as to said defendant, and in favor of the plaintiff against the defendant John B. Malatesta in the sum of $37,535, with interest thereon from December 9, 1930, and costs. The order denying plaintiff's motion for a new trial is affirmed.

FINCH, P. J., MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Judgment and order granting defendants' motion to dismiss the complaint and for judgment on the counterclaim reversed, with costs to the appellant against the defendant John B. Malatesta, and judgment directed in favor of plaintiff and against defendant John B. Malatesta in the sum of $37,535, with interest thereon from December 9, 1930, and costs; and judgment directed in favor of defendant J. B. Malatesta, Inc., dismissing the complaint. Order denying plaintiff's motion for a new trial affirmed.