## People *v.* Fisher *et al.*

*(Supreme Court, General Term, First Department.   December 31, 1891.)*

GAMING—KEEPING ROOM AND DEVICES FOR RECORDING BETS—EVIDENCE.

At the trial of an indictment against several defendants for keeping and being
occupants of a room used for recording bets, and exhibiting devices and apparatus
therefor, in violation of Pen. Code, § 351, a detective testified that, on the wall of
said room, in New York city, were slates on which were the word "Guttenberg,"
which was the name of a place where there was a race-course, and the words "First
Race," "Second Race," and "Third Race," with names of horses, among them the
name "Bootjack;" that men employed about the place, after having been spoken to
by defendant F., made changes on the slates; that several persons went to a win-
dow in a partition at the rear of the room, behind which sat defendant J.; that the
detective went to the window, and told J. he wanted to put "$3 on Bootjack
straight;" and, on J.'s saying, "5 to 1, 15 to 3," and that it cost 5 cents commission,

he paid $3.05 to J., who then handed him a printed paper, numbered "778," but otherwise meaningless, because the blanks in it were not filled. Three minutes afterwards it was announced from the office behind the partition that the horses were at the post, and five minutes thereafter that one of the horses named on the slates was the winner. A duplicate of the paper given to the detective was found on a file with others like it, except the number, and an entry corresponding thereto was found on a sheet headed, "Guttenberg, First Race," with the date, which was lying before the defendant S., who was the cashier. On the arrest of F., immediately afterwards, he was found in the private office in which the tickets were sold, using a book on the cover of which was written his name, and the street and number of the room; and he admitted that he was the manager of the place. *Held*, that, in the absence of evidence that the money was transmitted by telegraph to the racecourse, the jury might properly find that this was not done, and that the transaction was a mere cover for a violation of the law; and that a conviction of F. should be sustained, although the other defendants were acquitted. *People* v. *Wynn*, (Sup.) 12 N. Y. Supp. 379, distinguished.

Appeal from court of oyer and terminer, New York county.

Indictment against Henry Jones, Samuel Fisher, and others for misdemeanor. Defendant Fisher was convicted, and appeals from the judgment. Affirmed.

Pen. Code N. Y. § 351, provides: "A person who keeps any room * * * with books, apparatus, or paraphernalia, for the purpose of recording or registering bets or wagers, or. of selling pools, and any person who records or registers bets or wagers, or sells pools, upon the result of any trial or contest of skill, speed, or power of endurance, of man or beast, * * * or, being the owner, lessee, or occupant of any room, * * * therein keeps, exhibits, or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, * * * is punishable by imprisonment for one year, or by fine not exceeding two thousand dollars, or both."

The paper referred to in the opinion in this case as having been imitated by defendant was as follows, (see *People* v. *Wynn*, Sup., 12 N. Y. Supp. 379:) "Please execute for me, on the race-track at Brooklyn, at the races to be held this day on the grounds of the Brooklyn Jockey Club, at Brooklyn, in the county of Kings, state of New York, and at no other place or time, the sum of $5 on Fordham; but do not, under any circumstances, accept odds in this race at the said race-track at a less price than ———. I desire it to be positively and distinctly understood, and for this reason only do I place in your charge my money, that you place my said money for me only on said horse mentioned, and at no other place than on the grounds of the said Brooklyn Jockey Club, during the progress of the races this day, and for this purpose I make you my common carrier. For the expense incurred by you in so placing my said money on the said ground of said Brooklyn Jockey Club, I agree to pay the sum of 25 cents."

Argued before VAN BRUNT, P. J., and ANDREWS, J.

*Howe & Hummel*, for appellant. *De Lancey Nicoll*, (*McKenzie Semple*, of counsel,) for respondent.

VAN BRUNT, P. J. The indictment upon which the defendant was convicted charged the defendant and six others in seven counts, as follows: The first count charged the defendants with keeping a room for the purpose of recording and registering bets and wagers. The second count charged the defendants with being the occupants of a room, and knowingly permitting the same to be used for the purpose of recording and registering bets and wagers. The third count charged the defendants with being the occupants of a room, and therein keeping, exhibiting, and employing a device and apparatus for the purpose of recording and registering bets and wagers. The fourth count charged the defendants with recording and registering bets and wagers on a horse called "Bootjack." The fifth count charged the defendants with recording and registering divers unknown bets. The sixth and seventh counts each

charged the defendants with the felony of pool-selling.   On the trial the court withdrew from the jury's consideration the fifth, sixth, and seventh counts of the indictment, but submitted the first four counts, to-wit, the offense of keeping a room, being occupants of a room, exhibiting devices and apparatus for the recording of bets and wagers, and recording bets and wagers.   The verdict of the jury was a general verdict of guilty as to the defendant Fisher, and all the other defendants were acquitted.   It is claimed that the evidence was insufficient to justify the submission of the case to the jury, and that the verdict was inconsistent with the theory upon which the case was submitted to the jury, and it is further urged that the acquittal of the other defendants is inconsistent with the finding against the defendant Fisher.

The facts appearing upon the trial were substantially as follows: About 1 o'clock on the 23d of March, 1891, one Freel, a detective officer of the police of the city of New York, entered the premises in question known as "33 West Twenty-Ninth street," and "1213 Broadway."   On the left wall, as he entered from Twenty-Ninth street, were seven slates, containing the names of a number of horses, and also the word "Guttenberg," (at which place there was a race-course;) and on the first slate the words "First Race," on the second the words "Second Race," on the third the words "Third Race." In the rear of the room was a stained-glass partition, in which there were three small windows, and a door leading from the room to the office behind the partition.   The men employed about the place made several changes on the slates after having been spoken to by the appellant, and a number of persons went to the window, behind which sat the defendant Jones.   At 1:59 o'clock the detective then went up to Jones' window, and told him he wanted to put "$3 on Bootjack straight."   In answer, Jones said, "5 to 1, 15 to 3." The detective handed Jones a $10 bill, who told him it cost 5 cents commission.   The detective then took a 10-cent piece out of his pocket, and gave Jones the 10-cent piece, and Jones handed back $7.05, with the following paper:

"778.   Original.

"Please execute for me, on the race-track, at the races to be held this day on the grounds of the ———, at $\binom{\text{Guttenberg,}}{\text{Gloucester,}}$ in the county of ———, state of ———, and at no other place or time, the sum of ———, on ———; but do not, under any circumstances, accept odds in this race at the said race-track at a less price than ———.   I desire it to be positively and distinctly understood, and for this only do I place in your charge my money, that you place my said money for me only on said horse above mentioned, and at no other place than on the grounds of the said ———, during the progress of the races this day, and for this purpose I make you my common carrier.   For the expense incurred by you in so placing my said money on the said grounds of said ———, I agree to pay you the sum of five cents."

—For what purpose does not clearly appear, as there is nothing whatever to connect it with the transaction testified to, except its number, the blanks left in it making it absolutely of no import.   Two minutes after 2 it was announced from the office behind the partition that the horses were at the post, and at seven minutes past 2 that the race was over, and that the horse Young Duke was the winner.   Young Duke's name was on one of these blackboards.   The detective then left, and in a few minutes returned, with several other officers, and they arrested the persons found in the place, and seized everything in sight.   Going behind the partition into the office, the officer saw various of the defendants, apparently attending to their duties.   All the defendants were arrested and taken to police head-quarters, the appellant admitting that he was the manager of the place.   Among other things seized was a file containing 128 duplicate of the paper given to the detective (except the number marked on the face,) among which was one numbered 778,

marked "1,373 Bootjack," and also a sheet containing the words "Guttenberg, First Race, March 23rd, 1891," which was lying in front of the defendant Spencer, the cashier, upon which appears the entry, "778, 1,573," under a column headed "Bootjack." Upon this evidence the jury found the defendant Fisher guilty, and acquitted the other defendants.

Although the verdict may be incongruous, as the evidence shows the defendant Jones to have been as guilty as the defendant Fisher, yet it is apparent that the jury found their verdict against the principal, and allowed the instruments by which the principal was violating the law to escape. Because the jury were too lenient to some of the defendants is no reason why the appellant should be allowed to go free. It has been claimed that the evidence in this case is no stronger than that which appeared in the case of *People* v. *Wynn*, (Sup.) 12 N. Y. Supp. 379, where this court held that there was not sufficient evidence to go to the jury to convict the defendant, under the statute in question; and there is no doubt that there was a childish attempt to bring the action of the defendants herein within the ruling contained in the *Wynn Case.* But the probative force of the evidence in the two cases is as wide apart as the two poles. In the *Wynn Case* there was an express refusal to take a bet, and there was a contract to place the bet upon the track, made out with all the particulars, and there was sufficient time in which that contract might have been carried out. In the case at bar the evidence is that the detective stated that he wanted to bet so much money on a certain horse, and he was accommodated. The handing out of a paper containing some printed matter upon it, which was absolutely meaningless, unless the blanks in it were filled out, did not alter in any way the nature of the transaction, although it was, as already observed, a childish attempt to imitate what had been done in the *Wynn Case.* The only part of that paper that was of any value was the number thereon, which put its ear-mark on the transaction. That this was so is evidenced by the fact that duplicate tickets, with the same number, recording the same transaction in the form given by the detective, were found, and also the sheet lying before the cashier at the time he was arrested. The transaction was had in New York city three minutes before the race commenced, and, though it is claimed that there was no evidence to show but that this money was transmitted by telegraph to the race-course, yet the jury had the right, from their own knowledge of human events, to determine, in the absence of evidence to the contrary, whether such a thing was possible or not, and, if they found it to be impossible, to come to the conclusion that the whole was a mere cover for the purpose of violating the law It might be just as well said that, if a crime was committed at the Battery on one day, an *alibi* might be proved by showing that the defendant was in the City Hall park the next, in the absence of evidence that it was possible to go from the Battery to the City Hall park within the time embraced between the two events. This is undoubtedly an extreme instance, but it only illustrates the principle that in the consideration of testimony the jury have a right to be governed by their knowledge of human affairs. Distances, geographical positions, the relation of the seasons, are things with which every one is supposed to be familiar; and, in the absence of evidence upon the subject, in the weighing of testimony the jury has a right to be governed by the knowledge which is common to men; and, if they were of opinion that it was impossible that this commission could have been executed upon the Guttenberg track, they had a right so to find, in the absence of the slightest particle of evidence, or any attempt upon the part of the defendant to prove, that anything of the kind had been done. It is true that a defendant is not bound to prove that he has not committed a crime, but, where the circumstances point necessarily towards guilt, if the inferences which naturally follow are not to be drawn, then some evidence tending to a different result must be given. We have thus the offer of the detective to bet, the acceptance of the wager, and in the

books and papers seized unanswerable indications that such bet or wager had been recorded. As to the claim that there was not sufficient evidence to hold the defendant Fisher, it is sufficient to say that he admitted he was the manager of this establishment, exercising supervision and control over it, was behind the doors of the private rooms in which the tickets were sold, and was using a book on the cover of which was written "W. N. Telegraph Co.," and below, "Fisher's, 33 West 29th Street." This evidence was clearly sufficient to show that the defendant was the manager of this business, and was the real principal in the commission of the crime charged. We think, upon the whole case, therefore, that the conviction should be affirmed.