(128 App. Div. 599.)

PEOPLE ex rel. COLLINS v. McLAUGHLIN, Warden of City Prison of Kings County.

(Supreme Court, Appellate Division, First Department. November 20, 1908.)

1. CONSTITUTIONAL LAW (§ 32*)—SELF-EXECUTING PROVISIONS.
    Const. 1894, art. 1, § 9, providing that no pool-selling, book-making, or any other kind of gambling shall be allowed within the state, adopted at a time when all gambling and betting was illegal, except that the law allowed pool-selling and book-making on certain tracks for certain days, while the same acts committed elsewhere were felonies, is not self-executing.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 33; Dec. Dig. § 32.*]

2. GAMING (§ 71*) — CRIMINAL RESPONSIBILITY — POOL-SELLING — STATUTES—CONSTRUCTION.
    Pen. Code, § 351, as amended by Laws 1908, p. 1873, c. 507, relating to pool-selling, and providing that any person who receives, registers, records, or forwards, or pretends to receive, register, record, or forward in any manner, any money wagered or offered for the purpose of being bet by or from any other person, is guilty of a misdemeanor, when considered in the light of the history of the legislation on the subject of gaming and pool-selling, refers to the receipt, registering, recording, or forwarding, and not to the money wagered, and does not make the receiving of money in payment of an oral bet, made between two individuals on a race track on the result of a race then and there to be run, a crime.
    [Ed. Note.—For other cases, see Gaming, Dec. Dig. § 71.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term.

Application for a writ of habeas corpus by the People, on the relation of Mellville Collins, against William McLaughlin, Warden of the City Prison of Kings County, for the discharge of relator. From an order sustaining the writ and discharging relator (60 Misc. Rep. 306, 113 N. Y. Supp. 306), defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

John F. Clarke, Dist. Atty. (Robert H. Elder, of counsel), for appellant.

De Lancey Nicoll, John B. Stanchfield, and Herbert Barry (Joseph S. Auerbach, of counsel), for respondent.

CLARKE, J. The relator was arrested upon a warrant issued by a city magistrate, in the Second division in the city of New York, charged with having violated the provisions of section 351 of the Penal Code as amended by chapter 507, p. 1873, of the Laws of 1908. The sworn information upon which the warrant was issued set up: That on the 16th of June, 1908, at the race course of the Brooklyn Jockey Club at Gravesend, borough of Brooklyn, county of Kings, a race course authorized by statute, relator made an oral bet of $5 with one Rall; that said Rall bet that "Rostrum," a horse entered in a race to be then and there run, would win, and relator accepted said bet; that the race was run, and Rostrum lost; that Rall, while standing upon the lawn of said race course, and after said race had been decided, handed to the relator the sum of $5, who thereupon received the same. On being arraigned, the defendant moved to dismiss the proceeding on the ground that the information did not set forth facts sufficient to constitute the commission of a crime. The motion was denied and relator held for trial. Thereafter he sued out a writ of habeas corpus, and, the writ having been sustained and the prisoner discharged, the district attorney brings this appeal.

The question presented is whether the receiving of a sum of money in payment of an oral bet, made between two individuals upon a race track upon the result of a race then and there to be run, constitutes a crime. The statute invoked by the learned district attorney in section 351 of the Penal Code, as amended by chapter 507, p. 1873, of the Laws of 1908. That section provides as follows:

"Sec. 351. Pool-selling, book-making, bets and wagers, etc. Any person who engages in pool-selling, or book-making at any time or place; or any person who keeps or occupies any room, shed, tenement, tent, booth, or building, float or vessel, or any part thereof, or who occupies any place, or stand of any kind, upon any public or private grounds, within this state, with books, papers, apparatus or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools, and any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election; or upon the result of any lot, chance, casualty, unknown or contingent event whatsoever; or any person who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person, or sells pools, upon any such result; or

any person who, being the owner, lessee, or occupant of any room, shed, tenement, tent, booth or building, float or vessel, or part thereof, or of any grounds within this state, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or becomes the custodian or depository for gain, hire or reward, of any money, property or thing of value, staked, wagered or pledged, or to be wagered or pledged upon any such result; or any person who aids, assists or abets in any manner in any of the said acts, which are hereby forbidden, is guilty of a misdemeanor, and upon conviction is punishable by imprisonment in a penitentiary or county jail for a period of not more than one year."

The learned district attorney makes his claim under that clause of the section which reads:

"Any person who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person"

—and asserts that the facts did state a crime for the reason that they showed that the relator, Collins, did receive money bet and wagered by and for another person, to wit, Rall, upon the result of a horse race.

Prior to the last constitutional convention of the state, the Constitution provided, in article 1, § 10, as follows:

"No law shall be passed abridging the right of the people peaceably to assemble and to petition the government, or any department thereof; nor shall any divorce be granted otherwise than by due judicial proceedings; nor shall any lottery hereafter be authorized or any sale of lottery tickets allowed within this state."

The revised Constitution adopted in 1894, and which went into effect the 1st day of January, 1895, provided as follows:

"Article 1, sec. 9. No law shall be passed abridging the right of the people peaceably to assemble and to petition the government, or any department thereof; nor shall any divorce be granted otherwise than by due judicial proceedings; nor shall any lottery or the sale of lottery tickets, pool-selling, bookmaking, or any other kind of gambling hereafter be authorized or allowed within this state, and the Legislature shall pass appropriate laws to prevent offenses against any of the provisions of this Article."

At the time of the adoption of this Constitution, all betting and gambling was illegal, except in the case of betting on race courses hereafter considered. The Revised Statutes provided as follows:

"Sec. 8. All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property, or thing in action so wagered, bet or staked, shall be void.

"Sec. 9. Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet herein prohibited, may sue for and recover the same from the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not."

"Sec. 14. Every person who shall, by playing at any game, or betting upon the sides or hands of such as do play, lose at any time or sitting, the sum of twenty five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or de-

livery, sue for and recover the money or the value of the things so lost and paid or delivered, from the winner thereof.

"Sec. 15. In case the person losing such sum or value shall not within the time aforesaid, in good faith and without collusion sue for the sum or value so by him lost and paid or delivered, and prosecute such suit to effect without unreasonable delay, the overseers of the poor of the town where the offense was committed, may sue for and recover the sum or value so lost and paid, together wih treble the said sum or value, from the winner thereof, for the benefit of the poor." 1 Rev. St. (1st Ed.) pp. 661–663, pt. 1, c. 22, tit. 8.

In Ruckman v. Pitcher, 1 N. Y. 392, in an action to recover from a stakeholder the amount of a bet which, at the request of the loser, the plaintiff, he had paid over to the winner, the Court of Appeals, in holding the action well brought, alluding to the statute against betting and gaming, said:

"The evident intention of the Legislature was to discourage and repress gaming in all its forms, including bets and every species of wager contracts of hazard, as a great public mischief, calling for effective measures of prevention and remedy. * * * The Revised Statutes which went into operation in 1830 fully supplied the deficiency, and, indeed, have gone the whole length of prohibiting all wagers, bets, and stakes upon any contingent or unknown event with the exception only of contracts of insurance, and upon bottomry and respondentia, and have enabled the loser to recover the money wagered and lost, not only of the winner, but also of the stakeholder, notwithstanding that he may, after the loss of the bet, have paid the same over to the winner. It was manifestly the intention of the Legislature to suppress and prohibit every species of wager and bet, either upon the racing of animals, or upon any contingent or unknown event whatsoever, other than the contracts expressly excepted, and to abolish all distinction between lawful and unlawful wagers, and make them all invalid and void. As one of the best and surest means of accomplishing that end, the provision was adopted enabling and authorizing the loser to sue for and recover back his stake or deposit from the stakeholder, whether the race or game may have been lost or not, or the money paid over to the winner or not."

That case was cited and followed in Storey v. Brennan, 15 N. Y. 524, 69 Am. Dec. 629. In Meech v. Stoner, 19 N. Y. 26, the court held that the right of action given by the statute for money lost in gaming was assignable and not a mere personal privilege of the loser.

The Penal Code dealt with various forms of betting and gambling. While, as pointed out, all were illegal, some were punished as misdemeanors, and for some offenses a civil action was given to the bettor or player, or to the overseers of the poor, to recover the amount lost or won, or in treble or five times that amount. The Penal Code provided, in section 336, that:

"It is unlawful to keep or use any table, cards, dice or any other article or apparatus whatever, commonly used or intended to be used in playing any game of cards or faro, or other game of chance, upon which money is usually wagered, at any of the following places: (1) Within a building or the appurtenances or grounds connected with any building in which a court of justice usually holds its sessions; or a building any part of which is usually occupied by a religious corrporation, or an incorporated benevolent, charitable, scientific or missionary society, or an incorporated academy, high school, college or other institution of learning, a library company, or building and mutual loan company. (2) Within any building or the appurtenances connected with any building while votes are received or canvassed therein at any election for an officer of this state or the United States, or while any public meeting is held therein. (3) Within the distance of one mile from the grounds upon which any training, review, drill or exercises of a military organization,

created or permitted by the laws of this state, is proceeding, or upon which any public fair, exhibition, exercises or meeting is held in the open air. Or (4) within any vessel lying in, or navigating, any of the waters of this state; or owned or navigated by or for account of a corporation created by the laws of the state."

Section 337 provided that any violation of the foregoing provisions was a misdemeanor. Section 339 provided that a person, who, by any fraud or false pretense whatsoever, while playing at any game, or while having a share in any wager played for, or while betting on the sides or hands of such as play, wins or acquires to himself, or to any other, a sum of money or other valuable thing, is guilty of a misdemeanor. Section 340 provided that a person who exacts or receives from another, directly or indirectly, any money or other valuable thing by reason of the same having been won by play at cards, faro, or any other game of chance, or any bet or wager whatever upon the hands or sides of the players, forfeits five times the value of the money, to be recovered in a civil action by the persons charged with the support of the poor. Section 341 provided that a person who wins or loses at play or by betting at any time the sum or value of $25 or upwards, within the space of 24 hours, is punishable by a fine not less than five times the value or sum so lost or won, to be recovered in a civil action by the persons charged with the support of the poor. Section 343 provided that any corporation, association, copartnership, or individual who shall keep a room, shed, tent, tenement, booth, building, float, or vessel, or any part thereof, to be used for gambling or for any purpose or in any manner forbidden by this chapter, or for making any wagers or bets made to depend upon any lot, chance, casualty unknown, or contingent event, or being the owner or agent knowingly lets or permits the same to be so used, is guilty of a misdemeanor. Section 344 provided that a person who is the owner, agent, or superintendent of a place or of any device or apparatus for gambling, or who hires or allows to be used a room, table, establishment, or apparatus for such a purpose, or who engages as dealer, game-keeper or player in any gambling or banking game, where money or property is dependent upon the result, or who sells or offers to sell what are commonly called lottery policies, is a common gambler and punishable by imprisonment for not more than two years or by a fine not exceeding $1,000, or both. By sections 345, 346, and 347, gambling apparatus could be seized and destroyed. By section 348, persuading another to visit a gambling place, in consequence whereof such other person gambled therein, is made a misdemeanor, and in addition such person is liable to such other person in an amount equal to the sum lost to be recovered in a civil action. By section 265 horse racing and gaming on the first day of the week were prohibited. By section 275, engaging in or promoting within two miles of the place where religious meeting is held any race of animals or gambling of any description constituted a disturbance of a religious meeting and a misdemeanor. By section 460, a person who bets, stakes, or wagers money or other property up-. on the result of a prize fight, or who holds or undertakes to hold money or property so staked or wagered, to be delivered to the winner thereof, is guilty of a misdemeanor. The condition of the law in re-

gard to horse racing, betting thereon, book-making, and pool-selling in 1894 require somewhat extended examination of the successive statutes.

Chapter 178, p. 192, of the Laws of 1877, entitled an act in relation to bets, wagers, and pools, provided as follows:

"Any person who shall•keep any room or building, or any part or portion of any room or building, or occupy any place upon public or private grounds anywhere within the state, with apparatus, books or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools, and any person who shall record or register bets or wagers, or sell pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election, or being the owner, lessee or occupant of any such room, building or part or portion thereof, shall knowingly permit the same to be used or occupied for any of the purposes aforesaid, or shall therein keep, exhibit or employ any device or apparatus for the purpose of registering or recording such bets or wagers, or the selling of such pools, or shall become the custodian or depositary for hire or reward, of any money, property or thing of value staked, wagered or pledged, as aforesaid, upon any such result, such person shall be deemed guilty of a misdemeanor, and shall, upon conviction, be punished by imprisonment in the county jail for not more than one year, or by a fine not exceeding $2,000, or by both such fine and such imprisonment."

This statute seems to have been the origin of section 351 of the Penal Code, which, as adopted in 1881, reads as follows:

"A person who keeps any room, shed, tenement, tent, booth, or any part thereof, or who occupies any place upon any public or private grounds within this state, with books, apparatus or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools, and any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election; or being the owner, lessee or occupant of any room, shed, tenement, tent, booth or building, or part thereof, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering, such bets or wagers, or the selling of such pools, or becomes the custodian or depositary for hire or reward, of any money, property or thing of value staked, wagered or pledged upon any such result, is punishable by imprisonment for one year, or by fine not exceeding $2,000 or both."

In the same Code, as originally enacted, section 343 provided as follows:

"A person who keeps a room, shed, tenement, tent, building, float or vessel, or any part thereof, to be used for gambling or for any purpose or in any manner forbidden by this chapter; or being the owner or agent knowingly lets the same to be so used, is guilty of a misdemeanor."

These provisions made book-making and pool-selling crimes, wherever conducted within the state. In 1887, the Legislature passed the so-called "Ives Pool Law" (chapter 479, p. 604, Laws 1887); section 4 thereof providing that:

"The number of days upon which races may be conducted upon any race track or grounds is limited to thirty days in each year, and during that number of days only races shall be authorized and allowed upon such race tracks or grounds during which time the same may be kept open for the admission of the public, subject to the conditions and limitations prescribed by the acts or the several amendments thereto under which the said associations were incorporated, and the provisions of sections 351 and 352 of the Penal Code

shall not apply to the grounds of such associations during the number of days in each year during which the said races are hereby authorized; that such racing and all pool-selling in this state shall be confined to the period between the 15th day of May and the 15th day of October in each year, and all pool-selling shall be confined to the tracks where the races take place, and on the days when the races take place."

"Sec. 7. Any person who shall engage in pool-selling at any time or place except as hereinbefore stated shall be guilty of a felony and upon conviction shall be punished by imprisonment in the state prison for a period not less than one, nor more than five years.

"This act shall take effect immediately," and was passed May 26, 1887.

By this act pool-selling and book-making, which had theretofore been prohibited and made criminal everywhere, became "authorized and allowed" by law on certain race tracks and at certain times. Brennan v. Brighton Beach Racing Ass'n, 56 Hun, 188, 9 N. Y. Supp. 220. Thereafter a struggle between the race tracks and the poolrooms began, which was reflected in ensuing legislation. By chapter 428, p. 586, of the Laws of 1889, section 343 of the Penal Code was amended so as to read:

"Any corporation or association, or the officers thereof, or any copartnership or individual who shall keep a room, shed, tent, tenement, booth, building, float or vessel, or any part thereof, to be used for gambling or for any purpose or in any manner forbidden by this chapter, or for making any wagers or bets made to depend upon any lot, chance, casualty, unknown or contingent event, or on the future price of stocks, bonds, securities, commodities or property of any description whatever, or for making any contract or contracts for or on account of any money, property or thing in action, so bet or wagered, or being the owner or agent knowingly lets or permits the same to be so used, is guilty of a misdemeanor. This section shall not be extended so as to prohibit or in any manner affect any insurance made in good faith for the security or indemnity of the party insured, and which is not otherwise prohibited by law, nor to any contract on bottomry or respondentia. And nothing in this section shall be construed to repeal or otherwise affect the provisions of chapter 479 [p. 604] of the Laws of 1887, entitled 'An act prescribing the period in each year during which, and the terms under which, racing may take place upon the grounds of associations incorporated for the purpose of improving the breed of horses, and suspending the operation of certain sections of the Penal Code.' "

It being a felony to sell pools or make books elsewhere than at an authorized race track, the poolroom people thereupon devised a scheme by which they claimed to be merely forwarders of the money deposited by bettors with them. They pretended to receive the same as common carriers to send to the race tracks where it could be bet. This is clearly shown by the opinions in People v. Wynn, 58 Hun, 609, 12 N. Y. Supp. 379, decided in December, 1890, affirmed on opinion below, 128 N. Y. 599, 28 N. E. 251, and People v. Fisher, 62 Hun, 622, 17 N. Y. Supp. 162, decided in December, 1891.

The next act was chapter 469, p. 966, of the Laws of 1893, which amended chapter 479, p. 605, of the Laws of 1887 so that section 7 thereof provided as follows:

"Any person who shall engage in pool-selling or book-making at any time or place except as hereinbefore stated, or who outside of any race track or grounds on which racing is had, owned, leased or conducted by racing associations incorporated under the laws of the state of New York for the purpose of improving the breed of horses, shall occupy any room, shed, tenement, tent or building, or any part thereof, or shall occupy any place upon any public or

private grounds within this state, with books, apparatus or paraphernalia for the purpose of recording or registering bets or wagers, or of selling pools, or who shall record or register bets or wagers or sell pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, or upon the result of any political nomination, appointment or election, or being the owner or lessee or occupant of any room, tent, tenement, shed, booth or building, or part thereof, knowingly shall permit the same to be used or occupied for any of these purposes; or therein shall keep, exhibit or employ any device or apparatus for the purpose of recording or registering such bets or wagers, or for the selling of such pools; or shall become the custodian or depositary for gain, hire or reward of any money, property or thing of value, staked, wagered or pledged, or to be wagered, or pledged upon any such result; or who shall receive, register, record, forward or purport or pretend to forward to or for any race course, whether managed and conducted in obedience to the provisions of this act or not, any money or consideration or thing of value, bet or wagered, or money, thing or consideration of value offered for the purpose of being bet or wagered upon the speed or endurance of any man or beast, or who shall occupy any place or building or part thereof, with books, papers, apparatus or paraphernalia for the purpose of receiving, or pretending to receive or for recording or registering, or for forwarding or pretending or attempting to forward in any manner whatever, any money, thing or consideration of value, bet or wagered or to be bet or wagered for any other person; or shall receive or offer to receive any money, thing or consideration of value, bet or to be bet at any race track, whether managed or conducted in obedience to the provisions of this act or not, or who shall aid, assist or abet in any manner in any of the acts forbidden by this statute, shall be guilty of a felony and upon conviction shall be punished by imprisonment in the state prison for a period of not less than one, nor more than five years."

The clear intent and purpose of this statute was to reach the pool sellers who were conducting their business, not upon the tracks, but in poolrooms, and to put an end to their pretense of being common carriers, and so the word "receives," upon which the learned district attorney now lays such stress, came into the statutes, for this act not only made it a felony to record or register bets or wagers and to sell pools, other than at a race track, but made it likewise a felony to become the custodian or depositary for gain, hire, or reward of any money staked, wagered, or pledged, or to be wagered or pledged, or to "receive, register, record, forward or purport or pretend to forward to or for any race course * * * any money * * * bet or wagered, or money * * * offered for the purpose of being bet or wagered * * * or to occupy any place * * * with books * * * for the purpose of receiving or pretending to receive, or for recording or registering or pretending to receive, or for recording or registering or for forwarding or pretending or attempting to forward in any manner whatever any money * * * bet or wagered or to be bet or wagered, for any other person; or shall receive or offer to receive any money * * * bet or to be bet at any race track."

Thus at the time of the convening of the constitutional convention, all gambling and betting was illegal, except that the law authorized and allowed pool-selling and book-making upon certain tracks for certain days when the same acts committed elsewhere were felonies. It was under these circumstances that the constitutional provision was adopted:

"Nor shall any * * * pool-selling, book-making or any other kind of gambling be authorized or allowed within this state."

This provision was not self-executing, but the first Legislature thereafter convened passed the following statutes:

By chapter 570, p. 370, of the Laws of 1895, chapter 479, p. 604, of the Laws of 1887, and chapter 469, p. 966, of the Laws of 1893, cited supra, were repealed. Section 17 (p. 377) of the act provided that:

"Any person who, upon any race course authorized by or entitled to the benefits of this act, shall make or record, directly or indirectly, any bet or wager on the result of any trial or contest of speed or power of endurance of horses taking place upon such race-course, shall forfeit the value of any money or property so wagered, received or held by him, to be recovered in a civil action by the person or persons with whom such wager is made, or by whom such money or property is deposited. This penalty is exclusive of all other penalties prescribed by law for the acts in this section specified, except in case of the exchange, delivery or transfer of a record, registry, memorandum, token, paper or document of any kind whatever as evidence of any such bet or wager, or the subscribing by name, initials, or otherwise, of any record, registry or memorandum in the possession of another person of a bet or wager, intended to be retained by such other person or any other person as evidence of such bet or wager."

By chapter 571, p. 378, Laws 1895, section 343 of the Penal Code was amended by striking therefrom the provision that "nothing in this section shall be construed to repeal or otherwise affect the provisions of chapter 479 [p. 604] of the Laws of 1887." And by chapter 572, p. 379, Laws 1895, section 351 of the Penal Code was amended so as to read as follows:

"Any person who engages in pool-selling, or book-making at any time or place; or any person who keeps or occupies any room, shed, tenement, tent, booth, or building, float or vessel, or any part thereof, or who occupies any place, or stand of any kind, upon any public or private grounds, within this state, with books, papers, apparatus or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools, and any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election; or upon the result of any lot, chance, casualty, unknown or contingent event whatsoever; or any person who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person, or sells pools, upon any such result; or any person who, being the owner, lessee or occupant of any room, shed, tenement, tent, booth or building, float or vessel, or part thereof, or of any grounds within this state, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of such pools, or becomes the custodian or depositary for gain, hire or reward, of any money, property or thing of value, staked, wagered, or pledged, or to be wagered or pledged upon any such result; or any person who aids, assists or abets in any manner in any of the said acts, which are hereby forbidden, is guilty of a felony, except when another penalty is provided by law, and upon conviction is punishable by imprisonment in the state prison for a period not less than one year, nor more than two years, or by such imprisonment together with a fine not exceeding two thousand dollars. When an exclusive penalty is provided by law for an act hereby prohibited, the permitting of the use of premises for the doing of the act in such case shall not be deemed a violation hereof, or of section 343 of this Code."

The phraseology of section 351, as so amended, is quite clearly derived from section 7 of chapter 479, p. 605, of the Laws of 1887, as

amended by chapter 469, p. 966, of the Laws of 1893. The effect of these acts, read together, was to make the acts prohibited felonies when committed at any other place than an authorized race track. The statutes did not authorize or allow such acts upon an authorized race track. They were still forbidden by law everywhere, but the making or recording of a bet upon such race track, except in case of the exchange, delivery, or transfer of a record, registry, memorandum, token, paper, or document, as evidence of a bet or wager, was not a crime. It was illegal, and the value of any money or property bet or wagered could be recovered in a civil action by the person or persons with whom such bet was made. That is to say, that provision of the Revised Statutes, namely, a civil action to recover, which the Court of Appeals had said in Ruckman v. Pitcher, supra, manifested the intention of the Legislature to suppress and prohibit every species of wager and bet "as one of the best and surest means of accomplishing that end," was made the exclusive penalty for these illegal acts committed on race tracks.

The constitutionality of this legislation was upheld by the Court of Appeals in People ex rel. Sturgis v. Fallon, 152 N. Y. 1, 46 N. E. 302, 37 L. R. A. 419. The court said:

"It is not within the province of this court to declare that section 17 is in contravention of the Constitution for the reason that it does not deem the provision adopted appropriate or sufficient to prevent such offenses. * * * So long as this legislation was in any degree appropriate to carry into effect the purposes of the Constitution, it does not fall under its condemnation."

By chapter 506, p. 1872, of the Laws of 1908, section 17 of chapter 570, p. 377, of the Laws of 1895, was repealed; and by chapter 507, p. 1873, of the Laws of 1908, section 351 of the Penal Code was amended so as to read as hereinbefore set forth at the commencement of this opinion. The change in the section, as amended by the act of 1895, was to change the degree of the crime from a felony to a misdemeanor, punishable in a penitentiary or county jail for a term of not more than one year, and the striking out of the provision providing for an exception when another penalty is provided by law.

In the extended examination which I have made of the statutes, the only provision which I have been able to find which makes an oral bet, unaccompanied by any memorandum, a crime, is section 460 of the Penal Code, which provides that a person who bets, stakes, or wagers money or other property upon the result of a prize fight is guilty of a misdemeanor. The effect of the legislation of 1908 was to put an end to the exclusive penalty of a civil recovery for the making or recording of a bet upon an authorized race track, and to make the laws applicable to gambling, betting, book-making, and pool-selling the same within as without the inclosure. Betting is illegal everywhere, but it is not a crime unless so provided by positive enactment.

This court said, in People ex rel. Lawrence v. Fallon, 4 App. Div. 82, 39 N. Y. Supp. 865:

"It must be remembered that the Constitution did not establish any new rule in this state. All gambling and betting and wagering had been forbidden for many years by statute. The only effect of the Constitution was to put it

out of the power of the Legislature to authorize any kind of gambling by the repeal of the laws which had theretofore forbidden it."

The Court of Appeals said, in People v. Stedeker, 175 N. Y. 57, 67 N. E. 132:

"While at common law wagers on indifferent subjects were legal and might be enforced, a gambling house or a resort for gamblers was a common nuisance for which its keeper might be indicted. Wharton, Crim. Law, § 2446. The same distinction has obtained in this state where ordinary betting has never been made a crime, though in some cases subject to small pecuniary mulcts, while the keeping of a gambling house, selling lottery tickets, and the profession of a common gambler have been subjected to severe punishment."

The legislative history of the sections of the Penal Code here invoked clearly establishes that the particular acts here complained of were not within the purview of the statute. The words "by or for any other person," in the clause "any person who receives, registers, records or forwards or purports or pretends to receive, register, record or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered or offered for the purpose of being bet or wagered, by or for any other person, or sells pools upon any such result," have reference, as it seems to me, to the receipt, registering, recording, or forwarding, and not to the money or thing wagered. The person who receives payment of the bet he has made is not the "any other person" alluded to.

The statute is aimed at the stakeholder, the book-maker, and the pool-seller. To construe the language in the manner contended for by the learned district attorney is to wrench words from the context, to violate the grammatical construction of the sentence, and to ignore the historical development of the statute and the obvious intention of the Legislature in the various enactments of which it is the ultimate result.

It follows therefore that the order sustaining the writ of habeas corpus and discharging the prisoner was right, and should be affirmed. All concur.