[Crim. No. 1576. In Bank.—March 29, 1910.]

## In the Matter of the Application of W. W. ROBERTS for a Writ of Habeas Corpus.

CRIMINAL LAW—RECEIVING BET ON HORSE RACE WITHOUT CONSIDERA-
TION—INSUFFICIENT COMPLAINT—HABEAS CORPUS.—A complaint merely charging in substance, that the defendant at some place in San Francisco, without consideration, gain, hire, or reward, became the custodian and depositary of ten dollars in money then and there bet and wagered by two other persons with each other upon the result of a horse race then about to take place, states no offense, under section 337a of the Penal Code, enacted in 1909 (Stats. 1909, p. 21); and the defendant held in custody thereunder is entitled to be discharged upon writ of *habeas corpus*.

ID.—CONSTRUCTION OF SECTION—CREATION OF MANY OFFENSES—COM-
MON SUBJECT—DISJUNCTIVE STATEMENTS.—Although section 337a of the Penal Code comprises but one sentence, it creates many distinct

offenses, each connected with the subject, "every person," but set off from each other by appropriate punctuation, and so stated in the disjunctive form, as to render the several offenses described as apparently distinct and independent of each other, as if they had been enacted in separate sections.

ID.—GENERAL RULE OF CONSTRUCTION.—In general, when such disjunctive form of statement is used, creating distinct offenses, the effect of the language pertaining to each offense described, is not affected or modified by the words used solely in describing the other offenses, but the description of each is to be construed as if it stood alone, and were read in connection with the general words applying to all.

ID.—DISTINCT INDEPENDENT CLAUSES RELATING TO RECEPTION OF BETS. —Where there are two distinct independent clauses relating to the reception of bets, the first of which relates to the reception of bets in general, without qualification as to consideration, under which the complaint purposely excludes a second independent clause punishing one who, being the occupant of any place of shelter or of any grounds in the state, becomes the custodian "for gain, hire or reward" of any money staked upon the same result, the main question becomes one of implied repeal of the first clause.

ID.—RULE APPLICABLE TO IMPLIED REPEAL OF FIRST CLAUSE IN STATUTE. —The rule applicable to a statute in which a later clause is found to be irreconcilably inconsistent with a preceding clause, is that the clause later in position operates as a repeal of the former clause, so far as it is inconsistent. The part of a statute later in position in the same act or section is deemed later in time, and prevails over repugnant parts occurring before, though enacted to take effect at the same time. This rule is applicable when no reasonable construction will harmonize the parts.

ID.—IMPLIED REPEAL OF FIRST CLAUSE OF SECTION.—Applying such rule of construction, the provision of the first clause, so far as it relates to the mere receiving of money or property bet or wagered, is practically inoperative, and the only condition under which the receiving alone will be criminal are those mentioned in the second clause.

ID.—RESCRIPT OF NEW YORK CODE—CONSTRUCTION BY NEW YORK COURTS—OBJECT OF STATUTE.—Since section 351a of our Penal Code is a rescript of section 351 of the New York Penal Code, except as to penalty, the construction by the New York courts of their section is of persuasive force. They have decided that that section was intended to prevent bookmaking, pool-selling, and bets connected therewith in any way, and that it does not make it a crime merely to receive a sum of money as the result of an oral bet upon a horse race, and that the mere laying of odds standing alone is no crime, notwithstanding a statutory and constitutional prohibition of gambling. Under these decisions, no mere reception of a bet on a horse race, without interest, gain, or reward, violates our code; but it is a crime to receive bets forwarded in aid of bookmaking or pool-

selling, or to become the expressly prohibited "custodian or depositary for *gain, hire or reward*." [Per Henshaw, J., and Lorigan, J., specially concurring in judgment.]

PETITION for Discharge upon Writ of Habeas Corpus from the custody of the Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Carroll Cook, and Henry Ach, for Petitioner.

U. S. Webb, Attorney-General, and Raymond Benjamin, Deputy Attorney-General, for Respondent.

SHAW, J.—The petitioner was arrested upon a complaint which it is claimed alleges a violation of section 337a of the Penal Code. He contends that it does not charge any public offense whatever, and upon that contention he has sued out a writ of *habeas corpus*. It is admitted that no crime is charged against him, unless it be under the aforesaid section.

The charge in substance is that, without consideration, gain, hire, or reward, at some place in San Francisco not described, he became the custodian and depositary of ten dollars in money, then and there bet and wagered by two other persons with each other, upon the result of a horse race then about to take place.

Although comprising but a single sentence, section 337a of the Penal Code creates many distinct offenses. It begins by the phrase "every person," and each subsequent clause is connected therewith by appropriate punctuation. It is written in the disjunctive throughout, and the several offenses therein described are apparently as distinct and independent of each other as if they had been enacted in separate sections. In general, when such form of expression is used, the effect of the language pertaining exclusively to each offense described is not affected or modified by the words used solely in describing the other offenses, but the description of each is to be construed as if it stood alone and were read in connection with the general words applying to all.

The section contains two clauses which it is necessary to compare and construe, in order to determine the sufficiency of

the charge.  Separated from the other parts of the section and
placed in paragraphs in the order in which they occur, they
are as follows:—

"Every person . . .

who receives, registers, records or forwards, or purports or
pretends to receive, register, record, or forward, in any man-
ner whatsoever, any money, thing or consideration of value,
bet or wagered, or offered for the purpose of being bet or
wagered, by or for any other person, or sells pools upon any
such result; . . .

or who, being the owner, lessee, or occupant of any room,
shed, tenement, tent, booth or building, float or vessel, or part
thereof, or of any grounds within this state, knowingly per-
mits the same to be used or occupied for any of these purposes,
or therein keeps, exhibits or employs any device or apparatus
for the purpose of recording or registering such bets or wagers,
or the selling of such pools, or becomes the custodian or de-
positary for gain, hire or reward of any money, property or
thing of value, staked, wagered or pledged, or to be wagered
or pledged upon any such result: . . .

. is punishable by imprisonment in a county jail or state
prison for a period not less than thirty days and not exceeding
one year."

The words "such result," in these clauses, refers to a pre-
vious clause reading as follows: "upon the result of any trial
or contest of skill, speed, or power of endurance, of man or
beast or between men or beasts, or upon the result of any lot,
chance, casualty, unknown or contingent event whatsoever."

The language of the first clause in order, relating to the
receiving of money or things bet or wagered, is not in itself
ambiguous or uncertain in meaning.  As plainly as words can
declare, it forbids every person from receiving money, bet or
wagered by or for any other person, upon the result of a horse
race, or upon any contingent or unknown event.  It may re-
quire some stretch of credulity to believe that the legislature
could have enacted a penal law making an act which may be
so trivial a felony, but when a reading of the act discloses that
it has been enacted, there can be no misunderstanding of its
meaning or effect, if it stands alone and without qualification.

The complaint plainly shows that it was not intended to
charge a violation of the second clause, but *ex industria*, to

exclude that clause from consideration. It does not aver that the petitioner was the owner, occupant or lessee of any place of the kind specified in that clause, or at all, and it states that he became a custodian and depositary of the money "*not for gain, hire or reward,*" thus eliminating the conditions essential to the commission of a crime under the second clause. If it describes an offense at all, it is an offense defined in the first clause. In effect, one who receives money of another becomes the custodian thereof, and conversely, one who becomes a custodian of money, receives it. If the rule that the exact language of the statute need not be followed in charging an offense and that words of like import will suffice, particularly in a complaint for a preliminary examination, is applied, the complaint in substance charges that the petitioner received the money alleged to have been wagered. If this be so, the complaint charges an offense under the first clause, if that clause is not modified, qualified, or partially repealed by the second clause. Whether or not it is so affected is the only question to be decided.

To constitute a criminal acceptance of such money under the first clause, it is necessary that it be received for the use of the parties to the bet or wager, and not as the due or right of the person receiving it. He must take it as their property and not as his own. If he receives it in payment of a debt, or as a gift, he commits no offense, and the fact that it was the identical money or thing which had been wagered by the party or parties from whom he received it, is immaterial. In that case he would be no party to the bet or wager which the law intends to denounce as criminal. In order to constitute a crime under the first clause, therefore, the person receiving the money must do so as custodian or depositary for the parties to the bet or wager and must act as such for some period of time, however brief. If that clause alone is considered, it would be immaterial that he does not keep, lease or own a place for such business or that he receives it neither for gain, hire, or reward. Under the second clause it is necessary that both of these elements shall exist to constitute the crime there defined. The second clause, in effect, excepts and permits all receiving which is not for gain, hire, or reward and which is not done in some one of the places mentioned, by one who uses or occupies such place for that purpose. It is,

therefore, to that extent, inconsistent with that part of the first clause which forbids the receiving of such money for the use of the parties to the bet or wager anywhere, or under any circumstances. (We speak now of one who receives the money and not of one who merely owns or leases such a place and permits its use by others for such purposes.)

The rule applicable to a statute in which a later clause is found to be irreconcilably inconsistent with a preceding clause, is that the clause later in position operates as a repeal of the former clause, so far as it is inconsistent. "The part of a statute later in position in the same act or section is deemed later in time, and prevails over repugnant parts occurring before, though enacted to take effect at the same time. This rule is applicable where no reasonable construction will harmonize the parts." (1 Lewis' Suth. Stat. Const., sec. 280; see, also, *Emeric* v. *Alvarado,* 64 Cal. 609, [2 Pac. 418]; Pol. Code, sec. 4484; *Harrington* v. *Rochester,* 10 Wend. 551; *Branagan* v. *Dulaney,* 8 Colo. 412, [8 Pac. 699]; *Powers* v. *Barney,* 5 Blatchf. 203, Fed. Cas. No. 11561; *Ex parte Thomas,* 113 Ala. 1, [21 South. 370]; *Hand* v. *Stapleton,* 135 Ala. 162, 167, [33 South. 689]; *Van Horn* v. *State,* 46 Neb. 77, [64 N. W. 365]; *Omaha etc. Co.* v. *Kragscow,* 47 Neb. 611, [66 N. W. 658].) Applying this rule it is clear that the provision of the first clause, so far as it relates to the mere receiving of money or property bet or wagered, is practically inoperative, and that the only conditions under which the receiving alone will be criminal are those mentioned in the second clause. As the complaint against the petitioner expressly negatives the existence of some of these conditions, and fails to aver the others, and does not charge that he either registered, recorded, or forwarded the money received, as specified in the first clause, it fails to charge an offense under either clause of the section. The petitioner is entitled to his discharge.

What we have said concerning the inconsistency between the two clauses applies only to the part of the first clause relating to the "receiving" or money or things bet or wagered. It has no necessary bearing upon so much of the first clause as relates to a person who "records, registers or forwards" such money or things. Those acts are different from merely receiving and involve other elements, intents, and results.

It is ordered that the petitioner be released from custody under the warrant, and that his bail upon the issuance of the writ herein be exonerated.

Angellotti, J., and Sloss, J., concurred.

HENSHAW, J., concurring.—I concur in the judgment for the following reasons:—

Section 337a of our Penal Code is in all essentials (saving that of the penalty prescribed) an exact re-enactment of section 351 of the Penal Code of the state of New York. It is a familiar rule that when one state enacts a statute taken from the books of a sister state, the construction which the courts of the latter state have put upon the statute is of great value and of high persuasive force in its interpretation. If a reading of this statute did not clearly disclose, as I think it does, that its principal, if not its sole, object is to prevent bookmaking and pool-selling, the construction which the courts of New York have put upon it would resolve all possible doubt. The courts of New York were called upon to consider this law in the light of a provision of their constitution of 1894, which provided (art. I, sec. 9), "Nor shall any lottery, or the sale of lottery tickets, pool-selling, bookmaking or any other kind of gambling hereafter be authorized or allowed within this state, and the legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section." No such provision is found in the constitution of California, and as this state adopts the common law where the statutes are silent, it follows, as at common law, that the mere laying of a bet or wager upon an indifferent subject is not illegal. "The distinction has always been observed," says Wharton on Criminal Law, par. 2, p. 446, "between betting or gambling and maintaining a gambling house or a place to which people resort to gamble. While at common law wagers on indifferent subjects were legal and might be enforced, a gambling house or a resort for gamblers was a public nuisance, for which its keeper might be indicted." And the court of appeals of New York, upon this subject has said (*People* v. *Stedeker,* 175 N. Y. 57, [67 N. W. 132]): "The same distinction has obtained in this state, where ordinary betting has never been made a crime, . . . while the keeping

of a gambling house, selling lottery tickets and the profession of a common gambler have been subject to severe punishment." This opinion, it is pointed out in *People ex rel. Collins* v. *McLaughlin*, 128 App. Div. 599, [113 N. Y. Supp. 188], was rendered in 1903, eight years after the enactment of section 351 of the New York Penal Code in practically its present form. In the last-cited case the defendant was charged with a violation of the section, in having "received" five dollars at the race-course of the Brooklyn Jockey Club, as the result of a bet which he had made upon a horse race, the bet having been made and accepted orally with one John Rall. The court declared in terms that section 351 of the Penal Code was intended to prevent bookmaking and pool-selling, that is, the business of taking and recording bets and wagers and acts which are incidental to that business, and does not make it a crime to receive a sum of money as the result of a bet upon a horse race which was made and accepted orally. We may pause here to say that it would certainly be a singular law which would make it no crime to lay such a wager and for the winner to receive the money, and yet would make it a crime if one became a stakeholder of such wager without gain, hire, or reward. The court of appeals of New York, in *People ex rel. Lichtenstein* v. *Langan*, 196 N. Y. 260, [89 N. E. 921], construing this law, reaffirmed the declaration in *People* v. *Stedeker*, saying that "in this state an ordinary bet has never been made a crime, while the keeping of a gambling house has been subject to severe punishment. The laying of odds standing alone does not, therefore, constitute a crime. If a man should offer to bet the ladies of his party a pair of gloves to a box of candy, it would be the laying of odds and publishing the same. To hold him to be a bookmaker would, in my judgment, be a departure from the rule which gives to the terms of the statute their ordinary and accepted meaning, and would be a construction which was not within the contemplation of the legislature. The vice of bookmaking chiefly consists in soliciting and in the inducing the public to take chances in the carefully figured and planned scheme of the bookmaker, and this, in order to be profitable to him, requires the writing out of the list of the odds laid on some paper or material so that they could be seen by those who were solicited to invest."

With the light thus thrown upon the meaning, the purpose, the scope, and intent of the statute, the question immediately under- consideration is easily answered: Is a man who, without consideration to him paid, or to be paid, and not for gain, hire, or reward, becomes the custodian and depositary of a sum of money already wagered between two citizens, guilty of a felony? The very language of the law is against such a construction. And, bearing in mind that at common law the laying of a wager upon such an event was not a crime, the mere depositary of the money or things wagered himself could not be guilty of a crime. The language of section 337a in effect declares that "the custodian or depositary *for gain, hire or reward* is alone guilty." In other words, the law is directed against one who, for gain, hire, or reward, has become such a depositary; who thus is engaged in a business violating the spirit of the law aimed against pool-selling, bookmaking, and professional gambling. Elsewhere the section under consideration makes one guilty of a felony "who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward in any manner whatsoever any money, thing, or consideration of value bet or wagered, or offered for the purpose of being bet or wagered by or for any other person, or sells pools upon any such result." A reading of this language, with its context, makes it apparent that the "receiving" there under consideration does not make the mere reception as a stakeholder a crime, but it is a receiving in aid of the condemned purposes of bookmaking and pool-selling, a receiving which is a part of the scheme of registering, recording, and forwarding the money bet, in aid of the actual bookmaker or pool-seller. Not only is this quite apparent from the context, but it is the precise construction which has been put upon the language in New York, where the attempt was made to convict one who had received five dollars as the result of a wager. In *People ex rel. Collins* v. *McLaughlin,* 128 App. Div. 599, [113 N. Y. Supp. 188], a historical review is had of the legislation in New York upon this subject, and the reasons for the enactment of this especial provision are given. In brief, it appears that bookmaking and pool-selling upon race tracks in the state of New York were not illegal, though it was a felony to sell pools or make books elsewhere than at an authorized race track. The poolroom people outside of the

race tracks "thereupon devised a scheme by which they claimed to be merely forwarders of the money deposited by bettors with them. They pretended to receive the same as common carriers to send to the race tracks where it could be bet. This is clearly shown by the opinions in *People* v. *Wynn,* 35 N. Y. St. Rep. 487, [12 N. Y. Supp. 379], decided in December, 1890, affirmed on opinion below, 128 N. Y. 599, [28 N. E. 251]; and *People* v. *Fisher,* 42 N. Y. St. Rep. 884, [17 N. Y. Supp. 162], decided in December, 1891." It was to meet this condition that the language which we have been considering was adopted in New York. Thus one who becomes a depositary of a thing wagered for the purpose of recording and forwarding the wager, and so aids the business of bookmaking and pool-selling, or one who becomes a depositary of things wagered for hire, gain, and reward, and thus becomes a professional aid to gambling, are one, and both under the ban of the law. But as the law nowhere denounces as criminal the mere laying of a wager, so it would be preposterous to say that it denounced as a criminal one who became the depositary of such wager, not by way of aiding the pool-selling business, and not for hire or reward, but as a mere matter of accommodation to the bettors.

Lorigan, J., concurred.