(60 Misc. Rep. 306.)

PEOPLE ex rel. COLLINS v. McLAUGHLIN, Warden.

(Supreme Court, Special Term, New York County.   August, 1908.)

GAMING (§ 71*)—BOOKMAKING—BETTING.

Pen. Code, § 351, providing that any person engaging in poolselling or bookmaking, or any person who receives, registers, records, or forwards, or purports to receive, register, record, or forward, any money bet or offered to be bet by or for any other person, or who sells pools, is guilty of a misdemeanor, was intended to prohibit the taking and recording of bets and wagers, and acts incidental to that business, and does not make it a crime to receive a sum of money as the result of a bet on a horse race made and accepted orally.

[Ed. Note.—For other cases, see Gaming, Dec. Dig. § 71.*]

Application by the People, on the relation of Melville Collins, for writ of habeas corpus to William McLaughlin, Warden of the City Prison.  Relator discharged.

Order affirmed 128 App. Div. 599, 113 N. Y. Supp. 188.

John B. Stanchfield, De Lancey Nicoll, and Herbert Barry, for relator.

John F. Clark, Dist. Atty., Robert H. Elder, Acting Dist. Atty., and George W. Martin, Asst. Dist. Atty., for respondent.

BISCHOFF, J.   The relator is charged with a violation of section 351 of the Penal Code, in that he received $5 as the result of a bet upon a horse race at the race course of the Brooklyn Jockey Club on June 16, 1908; the bet having been made and accepted orally with one John Rall.

The provisions of section 351 of the Penal Code are not new.   With the exception of certain changes in the penalty and in the matter of exemptions, the language has remained unaltered since the year 1895, and, while by chapter 506, p. 1872, of the Laws of 1908, the existing statutory exemption of transactions upon race tracks from the operation of section 351 was removed, definition of the criminal acts to which the statute applies had for 13 years the same place in our criminal law which it has to-day.   In this proceeding I am to determine whether the successful better's receipt of the money or thing wagered is made a crime by the section referred to, which reads as follows:

"Sec. 351. Poolselling, bookmaking, bets and wagers, et cetera.—Any person who engages in poolselling, or bookmaking at any time or place; or any person who keeps or occupies any room, shed, tenement, tent, booth, or building, float or vessel, or any part thereof, or who occupies any place or stand of any kind, upon any public or private grounds within this state, with books, papers, apparatus, or paraphernalia, for the purpose of recording or registering bets or wagers, or of selling pools; and any person who records or registers bets or wagers, or sells pools upon the result of any trial 'or contest of skill, speed or power of endurance, of man or beast, or upon the result of any political nomination, appointment or election, or upon the result of any lot, chance, casualty, unknown or contingent event whatsoever; or any person who receives, registers, records or forwards or purports or pretends to receive, register, record, or forward, in any manner whatsoever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person, or sells pools upon any such result;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or any person who, being the owner, lessee, or occupant of any room, shed, tenement, tent, booth or building, float or vessel, or part thereof, or of any grounds within this state, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers or the selling of such pools, or becomes the custodian or depositary for gain, hire or reward of any money, property or thing of value, staked, wagered or pledged, or to be wagered or pledged upon any such result; or any person who aids, assists or abets in any manner in any of the said acts, which are hereby forbidden, is guilty of a misdemeanor, and upon conviction is punishable by imprisonment in a penitentiary or county jail for a period of not more than one year."

The particular words pointed to by the respondent as applicable to the present case are "or any person who receives, registers, records or forwards, or purports or pretends to receive, register, record or forward, in any manner whatever, any money, thing or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other person, or sells pools upon any such result," and the contention is that these words define the criminality of the relator's receipt of his winnings when read, "any person who receives * * * any money * * * bet or wagered * * * by * * * any other person * * * upon any such result," etc.

For the purpose of determining the intention of the Legislature when adopting a statute, it must necessarily be read as a whole. Only when so read can the conclusion be reached whether isolated words of the text may or may not properly be placed together in such a sense as to cover a particular case. According to the rule of construction prescribed by the Pen. Code, § 11, the "fair import" of the statute under consideration is to be the measure of its application, and as I read the words employed I cannot hold that section 351 fairly imports that a bet or the receipt of the thing wagered is a crime. The whole scheme of the section appears upon a reasonable reading to relate to bookmaking and poolselling; that is, to the business of taking and recording bets and wagers, and to acts which are incidental to that business. The very words of the clause under which the relator is held would seem, indeed, to exclude the meaning that the "bet received" described money won as the result of a bet, since from the context it is apparent that what is contemplated is the act of receiving, registering, recording, or forwarding the subject of a wager as yet undetermined before, not after, it is won or lost.

The words "by or for any other person," in this clause, may be taken, as a matter of grammatical construction, to qualify either "any person who receives," etc. or "any money * * * bet or wagered"; but it cannot qualify both, and it is only upon the assumption that the relative antecedent of the qualifying phrase is the latter that any argument in support of the criminal charge against the relator can be made at all. As a matter of reasonable interpretation, in view of the apparent purpose of the whole statute, however, I think that the phrase "by or for any other person" has reference to the receipt, registering, recording, or forwarding, etc., not to the money or thing wagered. This harmonizes with the general theory and aim of the section, while the contrary construction would very materially detract from

what the Legislature evidently designed to accomplish in prohibiting the business of bookmaking and poolselling and in penalizing the acts incident to that business, whether done through agents or correspondents, or personally by the person conducting the particular business.

The construction contended for by the district attorney requires a strained application of the words employed in the statute, contrary to their apparent sense, and it is quite clear to my mind that this section of the Penal Code has actually no reference to the case of a bet made between individuals, without the intermediate office of a stakeholder, nor to the winner's receipt of the money, or other thing or value transferred to him by the loser, when the event is determined. For all the years during which this statute has been in force it has not been deemed applicable to the case of ordinary individual betting. In People, etc., v. Stedeker, 175 N. Y. 57, 62, 67 N. E. 132, 133, the Court of Appeals, when discussing the condition of the law relative to gaming in this state, said:

"There has always been observed a distinction between betting or gambling and maintaining a gambling house or a place to which people resort to gamble. While at common law wagers on indifferent subjects were legal and might be enforced, a gambling house or a resort for gamblers was a public nuisance for which its keeper might be indicted. Wharton's Criminal Law, 446, § 2. The same distinction has obtained in this state, where ordinary betting has never been made a crime, though in some cases subject to small pecuniary mulcts, while the keeping of a gambling house, selling lottery tickets, and the profession of a common gambler have been subjected to severe punishment."

This opinion was written in the year 1903, eight years after the enactment of section 351 of the Penal Code in practically its present form, and certainly indicates that the broad application now sought to be given to that section had not been considered a serious possibility.

Again, as this section stood prior to the late amendment which defined the prohibited acts as a misdemeanor, any violation of its provisions was a felony. To apply it to the case of a single bet between individuals a term of imprisonment was thus to be the fixed punishment for the winning of money at simple hazard, yet at the same time the obtaining of money by cheating at cards or other play was punishable merely as a misdemeanor and so by fine. Pen. Code, § 339. Such a result is a shock to common sense, and the court must look for the reasons for adopting a construction of the statute which would necessitate it.

It may not be out of place to note that, if this relator is properly charged with a crime because of a construction of section 351, then every wager on a contingent event, if followed by the receipt of something by the winner, would place the latter within reach of the criminal law. The consequences of criminality would descend alike upon the successful participant in a raffle conducted for religious or charitable purposes, upon the girl whose partisanship for a college has been rewarded by the winning of gloves or candy through its athletic fulfillment, upon the messenger who, with knowledge, carries from loser to winner the thing won, and upon all who bet upon anything, except, possibly, upon a certainty, where the bet is paid. It may be that since the adoption of the Constitution of 1894, declaring the popular will

that every form of gambling be unlawful, the Legislature should properly proceed to make the simplest bet or hazard a crime; but, whatever the devised policy, it may be said that as yet that body has not done so, and, indeed, when legislation was proposed at the last session in the form of an amendment of the racing law (Laws 1895, p. 370, c. 570), directly prohibiting individual bets upon the result of a horse race, and punishing a violation by imprisonment (Assembly Bill No. 213, January 18, 1908), the proposed amendment did not become a law.

Because the provisions of section 351 of the Penal Code do not in their fair import prohibit the act with which the relator is charged, according to the views expressed in this memorandum, and there being no charge of a violation of any other penal statute, he is entitled to his discharge from custody.

Relator discharged.