Abthub Duítaif, J.
Each of the appellants was convicted of a violation of section 986-b of the Penal Law (possession of bookmaking or pool-selling records). The appellant Kelly was in addition convicted of a violation of section 986 of the Penal Law (book-making).
A police officer testified that while he, two brother officers, and appellant Kelly were in a shack on the platform of the Railway Express Company in Queens, at about 12:55 p.m., on February 20, 1961, the appellant Koenig was seen walking and approaching the shack and was heard to say to appellant Kelly, through an open window in the shack, “ Hello, Marty — I’ve got something for you.” Immediately thereafter one of the officers stepped out of the shack and placed Koenig under arrest and took from the pocket of the jacket .which Koenig was then wearing three slips of white paper, on all of which horse bets and identities of players were written. Koenig’s possession of bookmaking records is predicated on his possession, of these three slips of paper, all of which were received in evidence as People’s Exhibits Nos. 3A, 3B and 30, over objection and exception.
At the outset there is presented for determination the legality of the search of Koenig’s person and the seizure made from his pocket (U. S. Const., 4th Amdt.; N. Y. Const., art. I, § 12; Mapp v. Ohio, 367 U. S. 643; People v. Loria, 10 N Y 2d 368; People v. Ryan, 14 A D 2d 926).
The Fourth Amendment of the United States Constitution condemns searches and seizures which are unreasonable (Harris v. United States, 331 U. S. 145, 150). A search is reasonable when conducted pursuant to a legal search warrant, by consent, or incident to a lawful arrest. At bar the search was not made under any search warrant, nor does the record disclose a consent to the search. The search and seizure could, however, be upheld if incident to a laAvful arrest (Draper v. United States, 358 U. S. 307). The validity of an arrest Avithout a Avarrant depends on there being probable cause to make the arrest. That probable cause, however, cannot be based upon evidence obtained as a result of the search Avhen the validity of the search itself depends upon the legality of the arrest. If there is no probable cause to arrest initially the search is illegal for “ A search prosecuted in violation of the Constitution is not made laAvful by what it brings to light ” (Byars v. United States, 273 U. S. 28, 29). “ In law it is good or bad when it starts and does not change character from its success ” (United States v. Di RE., 332 U. S. 581, 595).
On the facts adduced, there seems to be no probable cause or justification for Koenig’s arrest and consequently, the search of *714 Koenig’s pockets that followed, and the seizure from said pockets of the evidence received against him, were entirely unwarranted, and the evidence consisting of those three papers (People’s Exhibits-Nos. 3A, 3B and 30) was tainted and inadmissible against him (Mapp v. Ohio, supra; People v. Loria, supra; People v. Ryan, supra).
Absent evidence of book-making or pool-selling records, no violation of the applicable statute was established against the appellant Koenig (Penal Law, § 986-b).
Nor may the alleged admission made by Koenig and by him denied be used to fill the void that here exists. An admission without more is never sufficient to warrant a determination of guilt (Code Crim. Pro., § 395). The statute (§ 986-b) prohibits possession of a certain type of a record. The possession is the gravamen of the crime and we may not substitute a denied admission in the place of the required record. The absence of the records is the absence of the corpus delicti.
The observation may be here pertinent that the trial record reveals that the exhibits received in evidence against Koenig were not in the same condition as they were when taken from Koenig. There was an assertion that something had thereafter been added to the exhibits —something that had not appeared originally. Counsel sought an opportunity to prove by a qualified expert that the addition was made at a later time. For the purpose of obtaining such proof the defense sought an adjournment. The Trial Judge denied the request and directed the trial to proceed. In the view that we have taken of this case, it is unnecessary to stress this point further, other than to mention that it appears that the interests of justice dictated that the proffered proof be adduced and that a denial of an adjournment for the reasons stated and under the circumstances disclosed were an improvident abuse of discretion (People v. Offermann, 204 Misc. 769; People v. O’Dell, 266 App. Div. 822; People v. Hernandez, 15 A D 2d 56).
As to appellant Kelly, the record discloses that on February 20,1961, between 12:30 p.m. and 12:45 p.m., he was in this shack above referred to and he was being observed by a police officer who was in the cab of a trailer truck which was backing into the platform at the identified location; this officer was 30 feet away, in front of and at an angle from Kelly. This officer’s testimony was that he saw Kelly approach three different men (the information charges that Kelly was approached by three different men) and accept from each of them money in bill form and a slip of paper. The papers Kelly received from these men he placed in a brown manila envelope. After the third man departed *715 the officer entered the shack where Kelly was and while placing Kelly under arrest the officer seized the brown manila envelope which he had observed Kelly place on a shelf and took from this envelope 18 slips of paper .containing horse bets with amounts wagered and identities of players. These 18 papers the officer said were slips (he did not say “ records ”) made by a person engaged in book-making, and all these papers were received in evidence against Kelly (People’s Exhibit No. 1), over objection and exception. The record discloses, without contradiction, that Kelly’s job for his employer, for whom he had worked about 40 years, entailed his meeting with other employees who came to the shack to check in with Kelly, that such employees handed Kelly cards containing data which Kelly entered in books. On the morning of the arrest three to five drivers came in to Kelly’s shack, handed Kelly cards from which cards Kelly made book entries.
The conviction of Kelly for violation of section 986-b of the Penal Law is predicated on those 18 slips which the officer took from the envelope seized from a shelf in the shack in which Kelly was performing his work.
Applicable to Kelly are the same factors and principles discussed with respect to Koenig. There was no search warrant for the search of the shack or Kelly, the record discloses no consent to the search and unless the search and seizure followed an arrest based on probable cause, the evidence it revealed which was received against Kelly was inadmissible.
The papers seized were improperly received against Kelly for still another reason. The information charges that when placing Kelly under arrest the officer observed Kelly placing a brown manila envelope on a shelf and the officer then seized that envelope. The testimony at the trial discloses that “ while placing Kelly under arrest I (the officer) observed him placing the brown manila envelope on a shelf in the shack, which I immediately seized ”. Both the information and the trial record indicate that Kelly’s arrest had not been completed when the search and seizure were made. In the absence of proof that Kelly was under arrest at the time the evidence was taken, such evidence was improperly received against him.
In People v. Ryan (supra, pp. 926-927) the Appellate Division, Second Department said (Nov. 27, 1961): “ Defendant was charged with the theft of an automobile. As the result of a collision between the allegedly stolen automobile and a taxicab, the taxicab driver wrote the taxicab’s license plate number on a ten-dollar bill which defendant handed him. A police officer thereafter searched defendant and seized said bill from his per *716 son. It is not clear from the record whether defendant was under arrest at the time of the search and seizure. In our opinion, in the absence of proof that defendant was legally under' arrest at the time that the ten-dollar bill was taken from his person, such bill was improperly received in evidence (Mapp v. Ohio, 367 U. S. 643). The error may be reviewed although there was no exception in the trial court (Code Crim. Pro., § 527).”
The conviction of the appellant Kelly for violating section 986-b of the Penal Law must fall when the tainted exhibits improperly received in evidence are excluded therefrom.
Should we turn the clock back to a time prior to Mapp and momentarily disregard the illegal search and seizure which this record here reveals, and examine the evidence in the light of pre-Mapp, we are confronted with the fact that the record description of Exhibit No. 1 (the 18 slips) and the testimony adduced at the trial disclose that these slips are not the records the possession of which is inhibited by section 986-b of the Penal Law.
Section 986-b of the Penal Law prohibits the possession of a “ivriting or paper * * * representing or being a record made by a person engaged in boolc-mahing * * * of a bet or wager.”
The evidence discloses that this envelope contained (on the claim of the respondent) slips allegedly received from players. These slips so received from supposed players are not records made by a person engaged in boolc-mahing. The supposed bookmaker gets these slips already written by the player — these slips indicate to the supposed book-maker the wager the player makes. Absent proof that the alleged book-maker made the record or the slip, or caused it to be made, there is a total lack of proof required by the provisions of section 986-b of the Penal Law.
Nor may it be urged that Kelly’s alleged admission (which he unqualifiedly denied) as to being a book-maker was also an admission of possession of records made by a book-maker. The trial record clearly reveals that Kelly made no statement with respect to the 18 slips.
The respondent urges among other matters that the alleged illegality of the searches and seizures at bar and the receipt in evidence of the allegedly illegally seized exhibits were not the subject of due and proper objection in the court below and that, therefore, the constitutional question involved may not be raised for the first time on this appeal, citing People v. Feldman Lbr. Co. (243 App. Div. 817.) The last-cited case has not even a remote resemblance to the situation at bar. There the court *717 decided that one charged with the violation of a statute (L. 1933, ch. 781), commonly known as the Schackno Act, and who is convicted of such statutory violation, may not for the first time on appeal challenge the constitutionality of the statute for the violation of which he was convicted. These appellants do not on this appeal challenge the constitutionality of the provisions of sections 986 and 986-b of the Penal Law for the violation of which they were convicted. They assert a violation of their constitutional rights in the procurement of evidence against them.
It is also the contention of the respondent “ that the failure of the defense to raise an objection to the admission of the allegedly illegally seized evidence constitutes a waiver of the constitutional violation ” now urged, citing Matter of the United Press Assn. v. Valente (308 N. Y. 71, 81-82).
The last-cited case too does not make the determination which the respondent claims for it. In this Press Assn, determination (308 N. Y. 71) our Court of Appeals decided that an application under article 78 of the Civil Practice Act by press associations and newspaper publishers to restrain a Trial Judge from carrying out his order, made in the interest of “good morals ”, excluding the general public and the press from the courtroom during the presentation of the People’s case, was properly denied. To hold otherwise, the court illustrated that it may serve to deprive a defendant of a fair trial where a defendant sought to Avaive his right to a public trial. Press associations and neAvspapers, it Avas determined, had no greater rights than the ordinary public and certainly had no greater lights than the defendant in a criminal prosecution.
The determination there made is no authority for the respondent’s assertion that failure to object to admission of illegally seized evidence constitutes a Avaivcr of a constitutional violation.
That both cases cited by the respondent are inapplicable at bar is clear. What is more significant is that respondent’s approach is completely unrealistic. The case at bar was tried on March 9,1961, and the sentence at bar Avas imposed on March 28, 1961. Mapp was argued before the United States Supreme Court on March 29,1961 (a day after the imposition of sentence at bar) and Mapp was not decided until June 19, 1961.
Prior to the determination in Mapp, it was the larv of this State that in a criminal prosecution, evidence otherwise competent, even though illegally obtained, is admissible against a defendant (People v. Defore, 242 N. Y. 13, cert. denied 270 U. S. 657). ObAdously, therefore, a defense objection at the trial of this case to the admissibility of the tainted exhibits, the results of an illegal search and seizure, would have been of no *718 avail. Mapp has brought about a change in our law (People v. Loria, 10 N Y 2d 368, supra). It is now clear that this court must in this determination apply the law as it is today. Judge Fboessel, writing for the unanimous Court of Appeals (Fuld, J., concurred only in result) said in People v. Loria (supra, pp. 370-371):
i i There can be no doubt that it is the duty of State courts to follow this Mapp holding in all trials taking place after June 19,1961. However, whether we are commanded to, and if not whether we should, apply it in pending appeals (see Griffin v. Illinois, 351 U. S. 12, 26; Great Northern Ry. Co. v. Sunburst Co., 287 U. S. 358, 363-366; Warring v. Colpoys, 122 F. 2d 642, cert. denied 314 U. S. 678; 70 Harv. L. Rev. 83, 129), where, as here, the trial was completed and an intermediate appellate court has affirmed before Mapp was decided, is a threshold question in this case. To do so would likely result in the reversal of many convictions in pending cases, although the trials were free from error and conducted according to the law of this State and the interpretation of the Constitution by the Supreme Court of the United States as of the time of the trials.
“ While it is the general rule that we give effect to the law as it exists at the time of our decision (Knapp v. Fasbender, 1 N Y 2d 212, 243; Matter of Tartaglia v. McLaughlin, 297 N. Y. 419; Quaker Oats Co. v. City of New York, 295 N. Y. 527, 536; see, also, Vandenbark v. Owens-Illinois Co., 311 U. S. 538, 542-543), some of the members of this court have felt that we are not required to, and should not, do so in the instant ease particularly because of the language employed by the Supreme Court in Mapp at pages 654-656, 658. The majority, however, are of the opinion that we should adhere to the general rule, and review defendant’s conviction in light of the law as it presently exists.
“ Holding, then, as we do, that the Mapp rule is to be applied in our review of pending appeals from pre-Mapp convictions.”
That the absence of exception to the admissibility of the offending evidence in the trial court is not a bar to a review here has been expressly determined in People v. Ryan (supra, decided Nov. 27, 1961).
The claim of waiver by the respondent made is equally untenable. A waiver of a fundamental constitutional right may only be made knowingly, understandingiy, intelligently and competently (Rico v. Olson, 324 U. S. 786; Matter of Bojinoff v. People, 299 N. Y. 145, 151; Von Moltke v. Gillies, 332 U. S. 708, *719 729). A defendant in waiving constitutional rights must act “affirmatively voluntarily and consciously” (People v. Guariglia, 303 N. Y. 338, 342).
It may not be justifiably urged here that these appellants knowingly, understandingly, intelligently and competently waived their constitutional rights to the exclusion of the tainted evidence and did so affirmatively, voluntarily and consciously, on March 9, 1961, the day of their trial, when such right only became fixed and determined on June 19,1961 (the day on which Mapp was decided), some three months or more after their trial.
It is, in addition, well established that courts indulge every reasonable presumption against a waiver of fundamental constitutional rights (Johnson v. Zorbst, 304 U. S. 458).
The respondent’s objections to the application at bar of the law as laid down in Mapp v. Ohio (supra) and People v. Loria (supra) must, therefore, fail.
ICelly’s conviction for violating section 986 of the Penal Law (book-making) is likewise not sustainable on the record presented.
We have in support of the charge of book-making the usual brief and unheard conversations with a number of (here three) unknown men, the passing of money, and a paper by each to the accused. Sometimes (not here) the format includes the reference to a scratch sheet and the ensuing arrest and the finding of money, in bill form, in different folds, and the finding of three slips (if three men approached) in the pocket of the accused. Here we have no finding of any slips from the three men who approached Kelly — all the slips allegedly went into the brown manila envelope, and no one attempted to isolate or identify the slips he allegedly received during the 15-minute period of observation preceding the arrest at bar.
This type of opera bouffe has yet to receive recognition. Our higher courts have consistently and persistently refused to accept such proof as sufficient to constitute book-making.
The Court of Appeals said in People v. Goldstein (295 N. Y. 61, 63-64): “ This court has not considered evidence sufficient where there is nothing more than the approach on the sidewalk of a feiv people to the defendant, the examination of a scratch sheet and the passing of money. The circumstances are not deemed sufficient to remove the case from uncertainty as to whether defendant’s status is that of a mere player or of a professional book-maker.” (Emphasis supplied.) (To the same effect: People v. Carpenito, 292 N. Y. 498; People v. Marra, 289 N. Y. 703; People v. Soshtain, 288 N. Y. 658; People v. Richardson, 287 N. Y. 563.)
*720 One other factor with respect to Kelly — the officer testified that he made a complete admission to engaging in book-making for and on behalf of another whom he allegedly named. Kelly testified, denied making any admission, and denied he was a book-maker. He is 58 years old, with an unblemished record, never an arrest, has been working for the same employer for almost 40 years. He had the benefit of reputable character testimony. He testified smoothly and responsively.
Applicable here is the determination made in People v. Patricola (9 A D 2d 686 [2d Dept.]), wherein the court said: “ Judgment reversed on the law and the facts, information dismissed, and fine remitted. In our opinion, the evidence was not sufficient beyond a reasonable doubt to justify the rejection of appellant’s testimony. Upon appellant’s testimony, he was not guilty of the crime charged in the information (see, e.g., People v. Gargano, 267 App. Div. 776; People v. Hjalto, 279 App. Div. 762; People ex rel. Collins v. McLaughlin, 60 Misc. 306, affd. 128 App. Div. 599).”
Kelly’s guilt of book-making (§ 986) has not been established beyond a reasonable doubt.
The judgment of conviction against each appellant should be reversed and the complaint dismissed as to each appellant. Creel, J. concurs; Murtaugh, Ch. J., concurs in result.
Judgment reversed etc.